[No. S082110. Mar. 5, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS LEE EPPS, Defendant and Appellant.

20

COUNSEL

Marilyn Drath, under appointment by the Supreme Court, for Defendant and Appellant.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster and Alex Ricciardulli, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter, Jeffrey Kahan, John R. Gorey and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN, J.—In this case, we decide whether the 1997 amendment to Penal Code section 1025, which added subdivision (c), effectively eliminated the right to a jury trial of prior conviction allegations, and if not, whether the erroneous denial of a jury trial in this context is subject to harmless error analysis on appeal. Consistent with our opinions in *People v. Wiley* (1995) 9 Cal.4th 580 [38 Cal.Rptr.2d 347, 889 P.2d 541] (*Wiley*) and *People v. Kelii* (1999) 21 Cal.4th 452 [87 Cal.Rptr.2d 674, 981 P.2d 518] (*Kelii*), we conclude the amendment did not completely eliminate the right to a jury trial, but it considerably narrowed the issues that the jury must decide. We also conclude denial of this very limited right to a jury trial is subject to harmless error analysis.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 1997, plainclothes police, conducting a surveillance, parked in front of a residence in Los Angeles. Defendant approached the police car and removed a chrome handgun from his coat pocket. He pointed the gun at the officers and said, "Do you want some of this?" The officers left, returned with uniformed backup, and arrested defendant. They found in his possession a suitcase containing a loaded .32-caliber chrome revolver, plastic bags containing marijuana and heroin, and a scale.

The District Attorney of Los Angeles County charged defendant by information with two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2)),[1] and one count each of felon in possession of a firearm (id., § 12021, subd. (a)(1)), sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), possession of marijuana for sale (id., § 11359), and possession of a controlled substance for sale (id., § 11351). The information also alleged firearm enhancements (Pen. Code, §§ 12022.5, subds. (a), (d) [use of a firearm re assault counts], 12022, subd. (a)(1) [armed with firearm re marijuana-related counts]). Finally, the information alleged a prior serious felony conviction (kidnapping in violation of id., § 209) for purposes of both the five-year enhancement (id., § 667, subd. (a)(1)) and the three strikes law (id., § 667, subds. (b)-(i)), as well as four prior prison terms for purposes of the one-year enhancement (id., § 667.5, subd. (b)).

The trial court bifurcated the trial of the prior conviction allegations from the trial of the substantive offenses. The jury found defendant guilty on all counts and found the firearm allegations true. The trial court then dismissed the jury, despite defendant's objection, and held a bench trial on the prior conviction allegations, finding those allegations true. The court sentenced defendant to 34 years, 8 months in state prison. Defendant appealed, arguing among other things that section 1025 entitled him to a jury trial of the prior conviction allegations. The Court of Appeal agreed, reversed the sentence, and remanded. The court concluded that denial of the jury trial warranted reversal irrespective of prejudice.

We granted the Attorney General's petition for review in order to decide what, if anything, remains of a defendant's right under section 1025 to a jury trial of prior conviction allegations and whether denial of a jury trial in this context automatically requires reversal.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

DISCUSSION

I.  *Did the 1997 Amendment to Section 1025 Eliminate the Right to a Jury
Trial of Prior Conviction Allegations?*

■ The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 2361-2363, 2366, 147 L.Ed.2d 435] (*Apprendi*); *Wiley, supra*, 9 Cal.4th at p. 585.) Prior to the 1997 amendment, section 1025 provided in relevant part: "When a defendant who is charged in the accusatory pleading with having suffered a previous conviction pleads either guilty or not guilty of the offense charged against him, he must be asked whether he has suffered such previous conviction. . . . If he answers that he has not, . . . the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty . . . ." (Stats. 1951, ch. 1674, § 88, pp. 3844-3845.) Similarly, section 1158 provides in relevant part: "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury . . . must . . . find whether or not he has suffered such previous conviction."

We construed these sections in *Wiley, supra*, 9 Cal.4th at pages 583 and 592, holding that the question whether multiple prior serious felony convictions were " 'brought and tried separately' " should be decided by the court rather than the jury. We noted that sections 1025 and 1158 "are limited in nature." (*Wiley*, at p. 589.) "By their terms, [these sections] grant a defendant the right to have the jury determine only whether he or she 'suffered' the alleged prior conviction . . . ." (*Ibid.*) We also noted the question, whether prior convictions were " 'brought and tried separately,' " was "largely legal," though it might have some factual content. (*Id.* at p. 590.) We said the relevant factual issues "generally are readily ascertainable upon an examination of court documents," and "[t]his is the type of inquiry traditionally performed by judges as part of the sentencing function." (*Ibid.*)

In *Kelii, supra*, 21 Cal.4th at pages 454 and 457, we reaffirmed our reasoning in *Wiley*, holding that the question whether a prior conviction is a serious felony for purposes of the three strikes law was also for the court, not the jury. Again, we said the statutory right to a jury trial is restricted "to hav[ing] a jury decide whether the defendant 'has suffered' . . . the prior conviction." (*Kelii*, at p. 457.) Again, we noted the question on which the defendant was seeking a jury trial was largely legal, though it might have some "limited" factual content. (*Id.* at p. 456.) Again, we held "[a] factual

inquiry, limited to examining court documents, is . . . 'the type of inquiry traditionally performed by judges as part of the sentencing function.'" (*Id.* at p. 457, quoting *Wiley, supra,* 9 Cal.4th at p. 590.)

While *Kelii* was on appeal, Senate Bill No. 1146 (1997-1998 Reg. Sess.) (Senate Bill 1146) was signed into law and took effect. As originally introduced, Senate Bill 1146 unambiguously eliminated the right to a jury trial of prior conviction allegations.[2] The bill would have amended section 1025 to say: "[T]he question whether or not [the defendant] has suffered the previous conviction shall be tried by the court." (Sen. Bill 1146, as introduced Feb. 28, 1997, p. 2.) During a hearing before the Senate Committee on Public Safety, supporters of Senate Bill 1146 asserted the only issue at a prior conviction trial is whether the present defendant is the same person described in the records of the prior conviction—that is, the question of identity. The evidence on this point, they argued, was generally conclusive, and the trial court could expeditiously try the issue without a jury. They also argued jury trials of this issue were burdensome and expensive for the court system, as well as aggravating for jurors.

The bill's opponents countered that identity was *not* the only issue that might arise in a prior conviction trial—a defendant, they asserted, also had a right to a jury trial of whether the prior conviction is a serious felony for purposes of the three strikes law. Of course, our decision in *Kelii* ultimately negated this argument, but at the time of the Senate committee hearing, we had not yet decided *Kelii,* and the question was still open.

The proponents of Senate Bill 1146 continued to maintain that identity was the only jury issue, but to obviate the concerns of the bill's detractors, they amended the bill so that it eliminated the right to a jury trial only with respect to the issue of identity. As amended, Senate Bill 1146 would have left section 1025 largely intact, but added the following exception: "If the question of whether or not the defendant has suffered the prior conviction is solely an issue of identity, the question . . . shall be tried to the court." (Sen. Bill 1146, as amended May 21, 1997, p. 2.) The Assembly felt this wording was too vague. It made some clarifying amendments, and Senate Bill 1146 was then adopted into law. (Sen. Bill 1146, as amended June 19, 1997.) The final version of Senate Bill 1146 divided section 1025 into subdivisions. Subdivisions (b) and (c) of section 1025 now provide in relevant part: "(b) Except as provided in subdivision (c), the question of whether or not the defendant has suffered the prior conviction shall be tried *by the jury* that tries the issue upon the plea of not guilty . . . . [¶] (c) Notwithstanding the

---

[2]At defendant's request, we take judicial notice of various official records constituting the legislative history of Senate Bill 1146. (Evid. Code, § 452, subd. (c).)

provisions of subdivision (b), the question of whether the defendant *is the person who* has suffered the prior conviction shall be tried *by the court* without a jury." (As added by Stats. 1997, ch. 95, § 1, italics added.) Thus, subdivision (b) closely tracks the former wording of section 1025, and subdivision (c) creates a specific exception for the question of identity.

The Attorney General argues section 1025, subdivision (c) takes away from the jury the only issue given to the jury under subdivision (b), leaving nothing for the jury to decide. Defendant, on the other hand, argues the structure of section 1025—creating a jury trial right but then carving out an exception—implies the Legislature specifically intended there to be residual issues for the jury. In light of the legislative history, we think the Legislature was trying to remain neutral with respect to all issues other than the issue of identity. Therefore, we do not think we can draw any strong conclusions one way or the other from the structure of section 1025.

Nevertheless, we agree with defendant that, in theory at least, there may be issues for jury determination under sections 1025 (as amended) and 1158. Neither *Wiley* nor *Kelii* limited the jury trial right in these sections solely to the issue of identity. Instead, they held that the jury decides whether the defendant " ' "has suffered" ' " the prior conviction. (*Kelii, supra,* 21 Cal.4th at p. 455.) That question subsumes the question of identity—that is, whether the defendant is the person described in the records of the prior conviction— but also may include the question whether the alleged prior conviction *ever even occurred.* For example, in a rare case, the records of the prior conviction may have been fabricated, or they may be in error, or they may otherwise be insufficient to establish the existence of the prior conviction. Though subdivision (c) of section 1025 gives the question of identity to the court, the question whether the alleged prior conviction ever occurred, when legitimately at issue, remains for jury determination under subdivision (b).

This conclusion is supported by a committee analysis of Senate Bill 1146. The analysis lists the following questions that the jury would still decide if Senate Bill 1146 became law: "Was someone convicted? What was the offense? What is the date of the conviction. In what court was the person convicted? . . . [W]as the defendant sentenced to prison based on that conviction? How long has the defendant been out of custody since he or she suffered the prior conviction?" (Assem. Com. on Public Safety, Analysis of Sen. Bill 1146, as amended June 19, 1997, p. 2.) Notably, the first question in this list—Was someone convicted?—is essentially the same as asking whether the alleged prior conviction ever occurred.

Of course, the committee also listed several other questions, suggesting the Legislature intended the jury to decide all these questions. But the

Legislature also was aware of our decision in *Wiley*, and though we do not have a case before us raising the issue, it appears that many of the listed questions are the sort of legal questions that are for the court under that decision. For example, determining what exactly the offense was or whether the defendant was sentenced to prison is " 'largely legal' " (*Kelii, supra*, 21 Cal.4th at p. 455, quoting *Wiley, supra*, 9 Cal.4th at p. 590), and though these questions require resolution of some facts, "[a] factual inquiry, limited to examining court documents, is . . . 'the type of inquiry traditionally performed by judges as part of the sentencing function.' " (*Kelii*, at p. 457, quoting *Wiley*, at p. 590.) Moreover, nothing in the legislative history suggests the Legislature intended to overturn our decision in *Wiley*. To the contrary, Senate Bill 1146 was expressly intended to narrow, not expand, the scope of the jury trial under section 1025. Therefore, the list of questions in the committee analysis should not be read as creating new jury trial rights that did not exist under *Wiley*. Nevertheless, the legislative history does indicate the Legislature's understanding that Senate Bill 1146 leaves some role for the jury.

Our discussion in *Kelii* also supports this conclusion. In *Kelii*, the 1997 amendment to section 1025 was not before us. Nevertheless, the defendant argued the amendment reflected the Legislature's understanding that the jury should decide whether a prior conviction qualified as a strike. (*Kelii, supra*, 21 Cal.4th at p. 457.) Accordingly, we looked briefly at the amendment. (*Ibid.*) We said that the Legislature, by reenacting section 1025 as amended, had implicitly approved our narrow construction of that section in *Wiley*. (*Kelii*, at p. 457.) We added that the purpose of the 1997 amendment was to *further* narrow the right to a jury trial, and therefore it should not be read as expanding that right beyond the confines of our *Wiley* holding. (*Kelii*, at pp. 457-458.) We concluded the Legislature wanted "to eliminate jury trials only on the issue of identity and to leave . . . other issues [concerning the respective roles of the court and the jury] . . . for judicial decision." (*Id.* at p. 458.) Therefore, we found the 1997 amendment irrelevant to the issue we were deciding.

Nevertheless, we added: "This leaves the final question of exactly what role the jury does play under section 1025. Perhaps because the final statutory enactment was a compromise, with the Legislature reducing, but not entirely eliminating, the jury's role, the answer is not readily apparent. The trial court might choose to determine first whether the defendant is the person who suffered the conviction. A determination that the defendant is not that person would clearly end the matter. If, however, as would usually be the case, the court finds the defendant is that person, *the jury apparently would then make a determination like the one it made in this case—that the*

*defendant suffered the prior burglary and attempted burglary convictions.* The court would, however, instruct the jury to the effect that the defendant is the person whose name appears on the documents admitted to establish the conviction. *This procedure would appear to leave the jury little to do except to determine whether those documents are authentic and, if so, are sufficient to establish that the convictions the defendant suffered are indeed the ones alleged.* Whether this role makes sense is not for us to say. If the Legislature wants to provide a greater, or more precisely defined, role for the jury, or chooses to eliminate the jury altogether as many states have done, it may still do so. In the meantime, we must interpret the amendment to section 1025 as we find it—*narrowing but not entirely eliminating the jury's role.*" (*Kelii, supra,* 21 Cal.4th at pp. 458-459, italics added.)

We see no reason to retreat from our conclusion in *Kelii.* It might be a rare case in which the question of authenticity, accuracy, or sufficiency of prior conviction records is seriously at issue, and depending on the circumstances, the question might well be for the court under the reasoning of *Wiley* and *Kelii.* Nevertheless, in an appropriate case, the defendant has a right under Penal Code sections 1025 and 1158 to a jury trial of those issues. Of course, the court would have to make a preliminary assessment of authenticity before admitting written documents into evidence (Evid. Code, §§ 403, 1401), but this preliminary assessment would not preclude the jury from subsequently finding the documents inauthentic if the evidence in that regard was sufficiently persuasive. (See, e.g., *DuBois v. Sparrow* (1979) 92 Cal.App.3d 290, 296-297 [154 Cal.Rptr. 717]; see also Evid. Code, § 1400 [defining "[a]uthentication of a writing" for purposes of admissibility into evidence].)

One might argue that defendants facing stiff three strikes sentences will be likely to raise these questions in every case, whether or not they have merit, simply hoping for the possibility of jury nullification. Therefore, the 1997 amendment will not serve its intended purpose of reducing the burden and expense of unnecessary jury trials, as well as the level of juror aggravation. We note, however, that official government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold requirements of admissibility. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question. Therefore, in most cases, there will be no contested factual question for the jury to decide, and the jury need only render its verdict.

One might question the wisdom of such a limited role for the jury, but as we said in *Kelii,* "[w]hether this role makes sense is not for us to say. . . .

[W]e must interpret the amendment to section 1025 as we find it." (*Kelii*, *supra*, 21 Cal.4th at p. 459.) We encourage the Legislature to revisit section 1025 and adopt a rule that makes more sense from the point of view of sound judicial administration. In the meantime, many defendants may be willing to waive a jury trial when there is no contested factual question for the jury to decide, and in any case, these trials will generally take a few minutes at most. In a typical case, the prosecutor and the court can explain to the jury that, though the evidence is uncontroverted, the law nevertheless entitles the defendant to a jury verdict. The jury would then better understand its role. The court, however, should be careful not to direct a verdict, which would be inconsistent with the defendant's right to a jury trial.

The Los Angeles County Public Defender as an amicus curiae argues we should reconsider our holding in *Kelii* in light of the high court's decision in *Apprendi*, *supra*, 530 U.S. 466 [120 S.Ct. 2348], and thereby confer a more significant role on the jury. Specifically, amicus curiae argues *Apprendi* gives defendants a right to have a jury decide whether a prior conviction is a serious felony for purposes of the three strikes law. *Apprendi*, however, reaffirms that defendants have no right to a jury trial of "the fact of a prior conviction" (*id.* at p. 490 [120 S.Ct. at p. 2362]), and here, at least, only the bare fact of the prior conviction was at issue, because the prior conviction (kidnapping) was a serious felony by definition under section 1192.7, subdivision (c)(20). We do not now decide how *Apprendi* would apply were we faced with a situation like that at issue in *Kelii*, where some fact needed to be proved regarding the circumstances of the prior conviction—such as whether a prior burglary was residential—in order to establish that the conviction is a serious felony.

In sum, we conclude that the 1997 amendment to section 1025 greatly restricted, but did not eliminate, the right to a jury trial of prior conviction allegations.

II. *Was the Trial Court's Failure to Give Defendant a Jury Trial of the Prior Conviction Allegations Harmless Error?*

As noted, the trial court deprived defendant of his right to a jury trial of the prior conviction allegations. The Attorney General argues the error was harmless under the *Watson* test applicable to state law errors (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*)), and therefore the Court of Appeal should have affirmed the sentence. Defendant responds that harmless error analysis does not apply where a defendant has been deprived of his right to a jury trial. Defendant also argues harmless error analysis would be unfair in this circumstance, because a defendant

would virtually never be able to show prejudice. Therefore, courts could routinely deprive defendants of jury trials of prior conviction allegations, and defendants would have no effective recourse.

We agree with the Attorney General that the *Watson* test for harmless error applies, and that the error was harmless in this case.

■ An error that violates a defendant's rights under the federal Constitution requires automatic reversal if it constitutes a "structural defect" in the trial. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [111 S.Ct. 1246, 1265, 113 L.Ed.2d 302].) On the other hand, if it represents "simply an error in the trial process" (*ibid.*), it is subject to harmless error analysis under the standard the high court announced in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]. ■ We need not, however, consider the applicability of these dual federal standards, because the right to a jury trial of the prior conviction allegations in this case is purely a creature of state statutory law. (*Apprendi, supra,* 530 U.S. at pp. 486-492, 496 [120 S.Ct. 2348, 2361-2363, 2366]; *Wiley, supra,* 9 Cal.4th at p. 585.) When a state need not provide a jury trial at all, it follows that the erroneous denial of that right does not implicate the federal Constitution. (Accord, *People v. Wims* (1995) 10 Cal.4th 293, 312, fn. 8 [41 Cal.Rptr.2d 241, 895 P.2d 77] [instructional error on the elements of a sentencing provision is not a structural defect requiring automatic reversal]; *People v. Vera* (1997) 15 Cal.4th 269, 278 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [the issue of erroneous denial of a jury trial of prior conviction allegations can be waived by failure to object]; *People v. Marshall* (1996) 13 Cal.4th 799, 851-852 [55 Cal.Rptr.2d 347, 919 P.2d 1280] [failure to obtain a jury determination of an alleged multiple-murder special circumstance is not a structural defect requiring automatic reversal].) Moreover, because the error is purely one of state law, the *Watson* harmless error test applies. (See, e.g., *People v. Breverman* (1998) 19 Cal.4th 142, 172, 178 [77 Cal.Rptr.2d 870, 960 P.2d 1094]; see also Cal. Const., art. VI, § 13.)

Applying the *Watson* test to this case, we conclude it is not "reasonably probable that a result more favorable [to defendant] would have been reached" (*Watson, supra,* 46 Cal.2d at p. 836) if the jury, instead of the court, had determined that defendant "suffered" (Pen. Code, § 1025) the prior convictions. As noted, the only factual question for the jury was whether the prior convictions occurred, and defendant did not question this fact at his prior convictions trial. The only witness at the trial was a fingerprint expert, and defense counsel's cross-examination and closing argument focused exclusively on the issue of identity, not questioning the fact that *someone* was convicted. Moreover, the prior conviction records were official government

documents clearly describing the alleged convictions. As such, the fact of the convictions was presumptively established. (Evid. Code, § 664.) Under those circumstances, the trial court's error could not possibly have affected the result.

As noted, defendant argues that a defendant will rarely be able to establish prejudice as a result of the erroneous denial of a jury trial. This assertion assumes we would find harmless error in a case involving contested factual questions, an issue we do not now decide. Moreover, defendants have other potential means of protecting their rights, such as the possibility of writ relief. (Cf. *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941] [defendant can obtain relief without showing prejudice where error is challenged by writ petition rather than on appeal]; *People v. Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452] [same].)

Defendant in this case had a right to a jury trial of the prior conviction allegations, and the trial court denied him that right. Nevertheless, he has not shown a reasonable probability the error affected the result. Accordingly, the Court of Appeal was wrong to reverse his sentence.

CONCLUSION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

George, C. J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority's conclusion that Penal Code section 1025, subdivision (c) does not completely eliminate the right to a jury trial on prior conviction allegations. But only under compulsion of *People v. Wiley* (1995) 9 Cal.4th 580 [38 Cal.Rptr.2d 347, 889 P.2d 541] (*Wiley*) and *People v. Vera* (1997) 15 Cal.4th 269 [62 Cal.Rptr.2d 754, 934 P.2d 1279] (*Vera*) do I concur in the majority's further conclusion that the erroneous denial of a jury in this case was harmless error.

Article I, section 16 of the California Constitution provides that "[t]rial by jury is an inviolate right and shall be secured to all . . . ." Despite that declaration, this court held in *Wiley* that "there is no constitutional right to have a jury determine factual issues relating to prior convictions alleged for purposes of sentence enhancement . . . ." (*Wiley, supra*, 9 Cal.4th at p. 589.) Building upon *Wiley*, this court concluded in *Vera* that a defendant who failed to object to a court trial on prior conviction allegations thereby waived his right to a jury trial. (*Vera, supra*, 15 Cal.4th at pp. 274-281.) I dissented from both decisions.

As I have previously explained, the essential but unstated premise of *Vera, supra*, 15 Cal.4th 269, was that the erroneous denial of the right to jury trial on prior conviction allegations is not a structural error that mandates reversal regardless of prejudice; "[b]y parity of reasoning, a violation of the right is subject to harmless error analysis." (*People v. Kelii* (1999) 21 Cal.4th 452, 459 [87 Cal.Rptr.2d 674, 981 P.2d 518] (conc. & dis. opn. of Werdegar, J.) (*Kelii*).) Today the majority makes this premise explicit and, thus, finds no prejudice in the trial court's erroneous denial of a jury trial over defendant's timely objection.

Today's decision, and the holding in *Vera, supra*, 15 Cal.4th 269, are difficult to reconcile with article VI, section 13 of the state Constitution. This provision speaks to the reversal of judgments on appeal for trial errors and bars reversal except when "the error complained of has resulted in a miscarriage of justice." (*Ibid.*)[1] The provision expressly subjects "misdirection of the jury" to harmless error analysis (e.g., *People v. Wims* (1995) 10 Cal.4th 293, 314-315 [41 Cal.Rptr.2d 241, 895 P.2d 77]) but makes no mention of the erroneous *denial* of a jury trial. Since the same document declares the right to a jury to be "inviolate" and "secured to all" (Cal. Const., art. I, § 16), the drafters' silence concerning denial of the right may reasonably be attributed to their assumption that denial, a greater error than misdirection, would obviously be recognized by the courts as a miscarriage of justice per se. This explanation surely is more plausible than the alternative, which is to assume that the drafters meant by their silence to include the erroneous denial of a jury in the final, catchall provision subjecting to harmless error analysis "any error as to any matter of procedure" (Cal. Const., art. VI, § 13), even while specifically mentioning the lesser error of "misdirection" (*ibid.*).

We might be justified in treating erroneous denials of the right to a jury as mere "matter[s] of procedure" (Cal. Const., art. VI, § 13) if it were true, as this court concluded in *Wiley*, that "there is no constitutional right to have a jury determine factual issues relating to prior convictions alleged for purposes of sentence enhancement . . . ." (*Wiley, supra*, 9 Cal.4th at p. 589.) But *Wiley*'s assumption has been invalidated, in large part, by the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*). In *Apprendi*, the high court held that, other than the bare fact of a prior conviction, "any fact that

---

[1] "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490 [120 S.Ct. at pp. 2362-2363].) To be sure, even after *Apprendi* the *federal* Constitution does not appear to require trial by jury of the narrow factual question identified in Penal Code section 1025, subdivision (c), namely, "whether the defendant is the person who has suffered the prior conviction . . . ." But a more fundamental question remains: to what extent was our sweeping rejection under the *California* Constitution of any right to a jury trial on "factual issues relating to prior convictions alleged for purposes of sentence enhancement" (*Wiley, supra,* 9 Cal.4th at p. 589) based on assumptions about the traditional, respective roles of courts and juries that *Apprendi* has invalidated? At the least we may no longer assert, as this court did in *Wiley,* that "the ability of courts to make factual findings in conjunction with the performance of their sentencing functions never has been questioned." (*Wiley,* at p. 586.) In withdrawing sentencing issues from the jury, as in *Kelii, supra,* 21 Cal.4th 452 and *Wiley,* and in failing to reverse when a jury trial is erroneously denied, as here and in *Vera, supra,* 15 Cal.4th 269, I believe this court may have intruded too far into an "inviolate" right. (Cal. Const., art. I, § 16.)[2]

In short, these considerations leave me less than satisfied with the majority's conclusion that the erroneous denial of defendant's right to a jury can be excused as harmless error. Nevertheless, I recognize that *Vera, supra,* 15 Cal.4th 269, effectively compels that conclusion by holding that a defendant waives the right if he fails to object to its denial. Of course the majority is correct that defendant cannot show prejudice—in the sense of a "reasonabl[e] probab[ility of] a result more favorable" to him (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243])—had a jury rather than the court tried the allegations: absent the remote possibility of nullification, no reason exists to believe a jury might have reached a different result than the court. Precedent therefore requires my concurrence in this formalistic application of *Watson,* which *Vera* in effect requires the court to apply. Yet, for the reasons set out above, I suspect our decisions in this area need to be reexamined.

**MOSK, J.**—I dissent.

In *People v. Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037], this court recognized that a trial court's "denial of [a] defendant's right to a jury trial" is error reversible per se.

---

[2]The majority implicitly recognizes that our prior decisions may have gone too far when it expressly leaves unanswered the question "how *Apprendi* would apply were we faced with a situation like that at issue in *Kelii,* where some fact needed to be proved regarding the circumstances of the prior conviction—such as whether a prior burglary was residential—in order to establish that the conviction is a serious felony." (Maj. opn., *ante,* at p. 28.)

The scope of the jury trial that the superior court denied defendant may indeed have been rather limited. But the act by which it effected its denial was altogether egregious.

The Court of Appeal made no effort to salvage the superior court's judgment. Neither will I.

I would affirm the judgment of the Court of Appeal.

**KENNARD, J.**—I dissent.

The majority holds that the Legislature has not, by the 1997 amendment to Penal Code section 1025, eliminated a criminal defendant's long-established statutory right to jury trial on a prior conviction allegation, but it also holds that the complete denial of that jury trial right may be, and here was, harmless error.

I disagree that denial of an accused's right to jury trial—whether the right's source is statutory or constitutional—may ever be harmless. As I explained in my dissenting opinion in *People v. Vera* (1997) 15 Cal.4th 269, 282-286 [62 Cal.Rptr.2d 754, 934 P.2d 1279] (dis. opn. of Kennard, J.), "[t]he denial of jury trial is a structural error that can never be harmless, no matter how strong the evidence of guilt." (*Id.* at p. 286; see also *People v. Kelii* (1999) 21 Cal.4th 452, 463 [87 Cal.Rptr.2d 674, 981 P.2d 518] (dis. opn. of Kennard, J.).) Because the Court of Appeal here correctly so held, I would affirm the Court of Appeal's judgment.

Appellant's petition for a rehearing was denied May 16, 2001. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.