Filed 1/6/22  P. v. George CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TRAVIS EUGENE GEORGE,<br><br>Defendant and Appellant. | B309785<br><br>(Los Angeles County<br>Super. Ct. No. BA277679) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, appellant Travis George and an unidentified compatriot shot and killed David Anthony Lyles. At appellant's 2006 trial, the prosecution argued appellant was guilty of first degree murder under three theories of liability: direct perpetrator, direct aider and abettor, and the natural and probable consequences doctrine. The jury found appellant guilty of first degree murder and found true firearm and gang enhancements. Appellant's murder conviction subsequently was reduced to second degree pursuant to *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*).

In 2019, appellant sought resentencing pursuant to Penal Code section 1170.95.[1] The superior court denied appellant's petition after issuing an order to show cause and holding an evidentiary hearing (see § 1170.95, subd. (d)). It found "beyond a reasonable doubt that [appellant] is ineligible for relief pursuant to section 1170.95" because he "could still have been convicted of first degree murder under the amended law (§ 1170.95, subd. (a)(3)), either as a major participant acting with reckless indifference to human life or as a direct aider and abettor acting with the intent to kill."

Appellant now contends the court's ruling was erroneous. He argues, and respondent Attorney General agrees, that the court applied an incorrect standard of proof at the hearing. We agree. The prosecution must prove a petitioner is ineligible for section 1170.95 relief beyond a reasonable doubt, and recent amendments to section 1170.95, subdivision (d)(3) make explicit that "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a

---

[1] All further section references are to the Penal Code unless otherwise indicated.

2

reasonable doubt, that the petitioner is ineligible for resentencing."  Respondent contends, however, that the error is harmless.  We reject this contention.  While an error in application of the standard of proof may indeed be harmless, we conclude that it is not here. We accordingly reverse and remand for a new hearing, at which the superior court shall apply the correct standard of proof and shall not use the "alternative theory instructional error analysis," which we conclude is inapplicable.

## FACTUAL BACKGROUND

After the hearing, the superior court made factual findings based largely on those recited in our prior appellate opinion, *People v. George* (Mar. 20, 2007, B190858) [nonpub. opn.].  The parties did not present additional evidence at the hearing, and the factual underpinnings of the incident are not disputed.

On December 18, 2004, Marasho Mazique attended a birthday party at his neighbor Michael Hammond's house, on West 62nd Street in Los Angeles.  At around 8:30 p.m., Mazique was back at his home when he heard eight gunshots ring out from the street in quick succession.  Mazique ran outside and saw Lyles, another party attendee, in the street. Lyles screamed, "Marasho, I'm hit."  Mazique followed Lyles's gaze down 62nd Street toward Menlo Avenue and saw two men running away; one was wearing a white t-shirt, and the other was wearing a red t-shirt.  Lyles said, "Those are the motherfuckers who shot me," and fired a gun at the two men.  The men got into a car and fled the scene.  Lyles later died from a gunshot wound to his neck, one of four gunshot wounds he received.

Michael Hammond was outside his house at the end of his child's birthday party when he heard 10 to 11 gunshots from a few feet away.  Hammond heard Lyles scream that he was shot

3

and saw him stumble into the middle of the street. Hammond saw two men running toward Menlo Avenue. One of them was wearing a white t-shirt.

Approximately ten minutes later, around 8:40 p.m., Tameka Lawrence heard "moaning and groaning" outside her West 81st Street home. She and her cousin Gregory Smith went outside and found appellant, a friend of Smith's, shirtless and bleeding from a gunshot wound to his chest. Smith took off his own shirt and tied it around appellant's wound, while Lawrence called 911.

Los Angeles Police Department (LAPD) officer James Carroll responded to Lawrence's call. Appellant told Carroll a car with an unknown occupant pulled up and fired three shots at him. When Carroll asked appellant where the shooting occurred, appellant pointed in different directions. Appellant also offered conflicting stories about where he had been going, including to his grandmother's and to a friend's, and said he did not know the friend's name or address. Carroll and other officers investigated the locations in which appellant claimed to have been shot and found no evidence of a shooting. People in the neighborhood said they had not heard or seen anything, and police did not find appellant's shirt.

Meanwhile, other LAPD officers investigated the scene of the Lyles shooting on West 62nd Street. They found blood stains on the sidewalk a few houses down from Hammond's house, as well as five bullet casings. Subsequent ballistics analysis determined that four of the five bullet casings were fired from the same gun, and none of the five was fired from Lyles's gun.

LAPD detective Frank Alvelais interviewed appellant at the hospital. Appellant told Alvelais he had been walking home

4

from Smith's house when an unknown person shot at him from a car.  At the time of the shooting, appellant was wearing a plain white t-shirt; he did not know what happened to the t-shirt.  Appellant admitted he was a member of the 8-Tre Hoover street gang.

Alvelais subsequently went to Lawrence's house, where he found a trash bag hanging from a fence.  The bag contained three shirts: a white shirt with the words "Crabs" and "Slobs" on it, with a hole in the upper left portion; a muscle shirt; and a black shirt.  Smith identified the black shirt as the one he had used to stanch appellant's bleeding.  DNA testing revealed that the blood on the black shirt matched one of the blood stains near the Lyles shooting, which in turn matched a saliva sample appellant provided.

LAPD detective Robert Quiroz testified as a gang expert at appellant's trial.  He knew from past contacts and appellant's tattoos that appellant was an active member of the 8-Tre Hoover gang, whose territory included 81st Street where Lawrence's house was located.  The area around 62nd Street where Lyles was shot belonged to the Brims, an offshoot of the Bloods and rival of the 8-Tre Hoovers.  The 8-Tre Hoovers did not associate with either the Crips or the Bloods; they used the derogatory terms "Crabs" for Crips and "Slobs" for the Bloods.  Younger members of the 8-Tre Hoovers were called "rascals," and Quiroz testified that they were the ones who committed shootings for the gang.  Appellant had a tattoo typical of a rascal tattoo.

**PROCEDURAL HISTORY**

## I.  *Trial and Direct Appeal*

Appellant was charged with the murder of Lyles.  The information also alleged that appellant or a principal personally

and intentionally discharged a firearm, causing great bodily injury or death (§ 12022.53, subds. (d) & (e)(1)), and that appellant committed the murder for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1)(A)). During appellant's jury trial, the prosecution dismissed the personal use allegation. It nevertheless argued that appellant was the direct perpetrator. In the alternative, the prosecution argued that appellant was a direct aider and abettor, or was guilty under the natural and probable consequences doctrine.

The jury found appellant guilty of first degree murder and found the remaining firearm and gang allegations true. The court sentenced appellant to 25 years to life for the murder, plus 25 years to life for the firearm enhancement.

We affirmed appellant's conviction and sentence on direct appeal. (*People v. George* (Mar. 20, 2007, B190858) [nonpub. opn.].) The Supreme Court denied appellant's petition for review.

## II. *Habeas Petitions*

Appellant subsequently filed several petitions for writs of habeas corpus. The superior court denied his first three.

In appellant's fourth petition for writ of habeas corpus, filed March 5, 2018, appellant sought relief under *Chiu*, *supra*, 59 Cal.4th 155, which held that aiders and abettors may not be convicted of first degree murder under the natural and probable consequences doctrine. After full briefing, the court granted the petition and vacated appellant's first degree murder conviction on December 11, 2018. It found that appellant's jury had been instructed with both valid and invalid theories of aider and abettor liability for first degree murder, and that it could not find

6

beyond a reasonable doubt that the jury had relied on a legally valid theory in convicting appellant.  The prosecution elected not to retry appellant, and on May 29, 2019 the superior court resentenced him to 15 years to life for second degree murder, plus 25 years for the firearm enhancement.

### III.  *Section 1170.95 Proceedings*

On June 21, 2019, appellant filed a petition for resentencing under section 1170.95.  The superior court appointed counsel for appellant and directed the prosecution to respond to appellant's petition.

The prosecution filed a response on February 14, 2020.  It argued that appellant was ineligible for resentencing because he was either the actual killer or a direct aider and abettor.  Specifically, it contended that appellant "could still be convicted of murder despite the change in the law."  The prosecution attached a copy of our prior opinion to its response.

Appellant, now represented by counsel, filed a reply on March 27, 2020.  Like the prosecution, he relied primarily on our prior opinion for his factual summary, though he "supplement[ed] the facts with direct references from the Reporter's and Clerk's Transcripts," excerpts of which he attached to the reply.  Appellant argued that he made a prima facie case for relief, which the prosecution had failed to adequately rebut.  He further contended that "there is a substantial probability that he was convicted as a natural and probable consequences aider and abettor," and "there is nothing in the record to show, as a matter of law, he was necessarily convicted on a still valid theory that he was the actual perpetrator or that he specifically intended to aid and abet the murder, rather than some lesser target offense."

The superior court concluded that appellant made a prima facie showing of eligibility for relief and issued an order to show cause on June 11, 2020. Both sides announced ready on August 26, 2020, and the court held a telephonic show cause hearing on September 30, 2020.

At the hearing, the prosecution opened its argument by asserting that it bore the burden "to prove that the defendant could be convicted of murder, first or second degree, in a post 1170.95 environment." The prosecution contended appellant could be convicted as the actual shooter, as a direct aider and abettor, as a conspirator, or under the "catch-all theory" of implied malice murder. The prosecution did not introduce any new or additional evidence in support of these theories; it relied entirely on transcripts from appellant's trial and our prior opinion.

Appellant responded that there was insufficient evidence that he intended to aid and abet a murder as opposed to a lesser crime, such as an assault; he emphasized the lack of evidence regarding the moments prior to the shooting as well as expert testimony that 8-Tre Hoovers' activities included both murders and assaults. Appellant also urged the court to employ the "alternative theory instructional error analysis," because "you can't be sure beyond a reasonable doubt that had the jurors not been instructed on a natural and probable consequences theory, they still would have convicted him of murder." He, too, relied on the trial transcripts and our appellate opinion. The court took the matter under submission.

The court denied appellant's petition on November 20, 2020. In its written memorandum of decision, the court made factual findings as summarized above. It then stated that

8

appellant was only entitled to relief under section 1170.95 "if he could not have been convicted of first or second degree murder had [section 1170.95] been in effect at the time of the commission of the crime." The court concluded appellant did not meet this standard for two reasons, and therefore was ineligible for relief "beyond a reasonable doubt."

First, it found "the record clearly reflects that Petitioner acted with a reckless indifference to human life and was a major participant in the underlying felony." Here, the court emphasized appellant's antagonistic t-shirt, his choice to walk from the car to Hammond's residence to carry out the shooting, and his attempts to misdirect police after the incident. It did not specify what the underlying felony was; appellant had not been charged with any, nor had the prosecution proceeded on a felony murder theory. Second, the court concluded appellant "could have been convicted as a direct aider and abettor acting with the intent to kill." The court again emphasized the gang evidence, including the tattoo marking appellant as a "rascal," as well as appellant's failure to render aid to Lyles or otherwise express shock or anger at the shooting. The court rejected appellant's "alternative theory instructional error analysis" as "misplaced," because "section 1170.95 instructs the parties and the court who bears the burden of proof and what that burden is."

Appellant timely appealed.[2]

---

[2] After he filed his notice of appeal, thereby divesting the superior court of jurisdiction over his case, appellant asked the superior court to reconsider its ruling. The court subsequently issued an amended memorandum of decision. Appellant asked this court to take judicial notice of the amended memorandum of decision, which he now argues should not be considered because the court lacked jurisdiction to enter it. We denied his request for

9

## DISCUSSION

### I. *Governing Law*

Effective January 1, 2019, California "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § I, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 841-842 (*Gentile*).) These amendments were made via the addition of three separate provisions to the Penal Code. (*Id*. at p. 842.)

First, to amend the felony murder rule, the Legislature added section 189, subdivision (e), which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." Because appellant was neither charged with an underlying felony, nor prosecuted under the felony murder

judicial notice and do not consider the extrajurisdictional amended memorandum of decision. (See *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.)

10

theory, this provision is, as appellant contends, inapplicable here and requires no further discussion.[3]

Second, to amend the natural and probable consequences doctrine, the Legislature added section 188, subdivision (a)(3). That statute provides, "Except as stated in subdivision (e) of Section 189 [felony murder liability], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." This new requirement that a principal act with malice "eliminates all murder liability under the natural and probable consequences doctrine." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 974, citing *Gentile, supra*, 10 Cal.5th at p. 839; see also *Gentile, supra*, at p. 843.)

Finally, the Legislature added section 1170.95 to provide a procedure for individuals convicted of murder under the felony murder rule or the natural and probable consequences doctrine to have their murder convictions vacated and to be resentenced on any remaining counts. (*Gentile, supra*, 10 Cal.5th at p. 843; § 1170.95, subd. (a).)

The first step in the section 1170.95 procedure is for the person seeking resentencing to file a petition with a declaration asserting "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and

---

[3] While respondent does not go so far as to agree with appellant, it states that it "does not rely on the superior court's alternative position that appellant was a major participant in an underlying felony who acted with reckless indifference to human life. That theory of murder liability requires the existence of an enumerated felony under section 189, but it is unclear what that felony would be in this case."

11

probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a), (b)(1)(A).) If the petition is facially sufficient, "the trial court must (1) appoint counsel for the petitioner if requested, (2) allow the People to file a response to the petition and allow the petitioner to file a reply, and (3) determine whether the petitioner has made a prima facie case for eligibility or entitlement to relief." (*People v. Eynon*, *supra*, 68 Cal.App.5th at p. 974, citing *People v. Lewis* (2021) 11 Cal.5th 952, 960.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) At the hearing, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1170.95, subd. (d)(3).)" (*People v. Lewis, supra*, 11 Cal.5th at p. 960.) As originally enacted, section 1170.95, subdivision (d)(3) provided that "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Former § 1170.95, subd. (d)(3).) Pursuant to Senate Bill No. 775 (2021-2022 Reg. Sess.), which was signed into

law on October 5, 2021 (Stats. 2021, ch. 551, § 2) and took effect January 1, 2022, section 1170.95, subdivision (d)(3) now provides that "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." It further states, "A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

## II.    *Burden of Proof*

The primary issue in this appeal is the burden of proof the prosecution must bear at the section 1170.95, subdivision (d)(3) hearing.  This is a legal question we review de novo.  (*Gentile*, *supra*, 10 Cal.5th at p. 843; *People v. Prunty* (2015) 62 Cal.4th 59, 71; *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 524; see also *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 237, review granted Mar. 10, 2021, S266652 (*Rodriguez*).)

The superior court concluded appellant was ineligible for relief because the prosecution proved he "could still have been convicted of first degree murder . . . either as a major participant acting with reckless indifference to human life or as a direct aider and abettor acting with the intent to kill."  Appellant contends this was error, as the prosecution should have been required to prove his ineligibility beyond a reasonable doubt.[4]  Respondent agrees, as do we.

---

[4] The appeal was filed and briefed before Senate Bill No. 775 was signed into law.  Knowing that our decision in this matter would likely issue following the law's January 1, 2022 effective date, such that its provisions would apply to this case,

Although the original text of section 1170.95, subdivision (d)(3) stated that the prosecution had to prove a petitioner's ineligibility for relief beyond a reasonable doubt, appellate courts were split over what, exactly, the prosecution had to prove to carry this burden. In *People v. Duke* (2020) 55 Cal.App.5th 113, 123 (*Duke*), review granted Jan. 13, 2021, S265309, depublished Nov. 23, 2021, S265309, the court held that the prosecution was required to "prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder." (Emphasis in original.) The *Duke* court explained this standard was "essentially identical to the standard of substantial evidence." (*Ibid*.) Other courts rejected this holding, concluding that the prosecution was required "to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility." (*People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; see also *Rodriguez, supra*, 58 Cal.App.5th at p. 244 ["it is the court's responsibility to act as independent factfinder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)"].) The Supreme Court granted review in *Duke* to consider whether "the People [can] meet their burden of establishing a petitioner's ineligibility for resentencing under Penal Code

we notified the parties of Senate Bill No. 775 and requested that they address its potential effect on this case at oral argument. The parties availed themselves of this opportunity at oral argument.

14

section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under Penal Code sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"  The Supreme Court granted review in *Lopez* and *Rodriguez* and held them pending resolution of *Duke*.

On November 23, 2021, the Supreme Court transferred *Duke* back to the court of appeal "with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551)."  The court of appeal has not yet reconsidered the matter, but Senate Bill No. 775's amendments to section 1170.95, subdivision (d)(3) expressly provide that the prosecution's burden is "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder  . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  The superior court here erred by holding the prosecution to a lesser standard.

Respondent urges us to find the error harmless, "because it is not reasonably probable that appellant would have otherwise obtained a different result."  Appellant replies there are "analytic problems underlying Respondent's contention that any error involving the trial court's adoption of a *Duke* standard was harmless."  He asserts that the evidence was insufficient to prove that he intended to aid and abet a murder rather than some lesser crime; we can "only speculate what findings the trial court would have made if it properly understood its factfinder function"; and the court would have been required to "properly consider . . . omitted facts and evidentiary vacuums within the totality of the evidence and would then have properly credited the

15

evidentiary vacuums against the party who bore the burden of proof." Although we agree with respondent that the error is subject to harmless error analysis, we agree with appellant that there is a reasonable probability the result may have been different had the prosecution been required to bear the appropriate burden.

The requirement that the prosecution must prove a petitioner's ineligibility beyond a reasonable doubt is statutory. The superior court's error in applying the wrong legal standard thus implicated state law only, and it is well-established that the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) applies to errors of state law. (See *People v. Epps* (2001) 25 Cal.4th 19, 29; *People v. Blackburn* (2015) 61 Cal.4th 1113, 1135.) The *Watson* test asks if it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.)

As explained in *Rodriguez*, *supra*, 58 Cal.App.5th at p. 244, the superior court sits as an "independent factfinder" at the section 1170.95, subdivision (d)(3) hearing, and in this capacity must "determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189." When the superior court applied an incorrect burden of proof while performing its factfinding duties in *Rodriguez*, the court held that the matter had to be remanded for a new hearing at which the proper standard of proof would apply. (*Id.* at p. 245.) The *Rodriguez* court did not consider whether the error could be harmless. However, the Supreme Court expressly left open the question of whether it "would find harmless error in a case involving contested factual questions," (*People v. Blackburn*,

*supra*, 61 Cal.4th at p. 1135, citing *People v. Epps*, *supra*, 25 Cal.4th at p. 30), a classification into which this case squarely fits. In *People v. Epps*, the Court concluded that the state law error at issue "could not possibly have affected the result" because the sole factual question was whether the defendant suffered prior convictions, and defendant did not contest that issue at trial. (*People v. Epps*, *supra*, 25 Cal.4th at pp. 29-30.) Here, in contrast, the entire question of appellant's guilt was at issue, and it is reasonably probable that the application of an erroneous burden of proof clouded the court's resolution of factual issues bearing on that ultimate question. We accordingly conclude the error was not harmless, and that remand for a new hearing is necessary.

In light of this conclusion, we do not reach appellant's other primary contention: that the evidence did not support the court's finding that appellant was a direct aider and abettor. The superior court may consider the parties' arguments regarding this issue in the first instance on remand.

## III. *Alternative Theory Instructional Error Analysis*

We do, however, briefly address appellant's contention that the superior court should have employed an "alternative theory instructional error analysis" when considering his eligibility for relief. We agree with *Rodriguez*, *supra*, 58 Cal.App.5th at pp. 239-240, that such analysis is not appropriate in the context of section 1170.95 petitions.

The "alternative theory instructional error analysis" comes into play when a superior court instructs a jury on two theories, one legally correct and the other legally incorrect. Such instructional error requires reversal unless the reviewing court finds, beyond a reasonable doubt, that the jury based its verdict

on the valid theory.  (*Chiu, supra*, 59 Cal.4th at p. 167; see also *People v. Aledamat* (2019) 8 Cal.5th 1, 12-13.) The relevant question in such cases is "not whether we believe it is clear beyond a reasonable doubt that the defendant is guilty under the legally correct theory, but whether we can say, beyond a reasonable doubt, that the legally incorrect jury instruction did not taint the actual jury verdict." (*People v. Baratang* (2020) 56 Cal.App.5th 252, 263.)

The relevant question at a section 1170.95, subdivision (d)(3) hearing is whether the petitioner could be found guilty of murder beyond a reasonable doubt, under one or more of the theories now recognized as legally correct.  The tainting of the petitioner's original jury is essentially a given under the section 1170.95 framework.  We thus agree with *Rodriguez, supra*, that the "backward looking evaluation" contemplated by the "alternative theory instructional error analysis" is "inconsistent with section 1170.95, subdivisions (a)(3) and (d)(3)'s explicit direction to the court to determine if the petitioner could now be convicted of murder under sections 188 and 189 as amended, not whether he or she was, in fact, convicted of murder under a still-valid theory." (*Rodriguez, supra*, 58 Cal.App.5th at p. 239.)

We also find persuasive the *Rodriguez* court's other reasons for finding the "alternative theory instructional error analysis inapplicable. First, "subdivision (d)(3) permits both parties to present new or additional evidence at the hearing after the issuance of the order to show cause. If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached." (*Rodriguez, supra*, 58 Cal.App.5th at p.

18

239.) Second, "section 1170.95 is available to defendants convicted of murder following a plea in lieu of a trial. Given the limited record in many of those cases, it would be impossible to assess whether a still-valid ground for a murder conviction existed, let alone to determine beyond a reasonable doubt that the valid ground was the basis for the plea. Yet section 1170.95 contemplates the same procedure to determine ineligibility in plea cases as in cases in which the murder conviction was reached at trial." (*Id.* at pp. 239-240.) Like the *Rodriguez* court, we find the single hearing procedure set forth in section 1170.95 telling; it is applicable to a wide variety of procedural and factual scenarios, and must be analyzed consistently across them unless and until the Legislature provides otherwise. We accordingly decline appellant's invitation to apply the "alternative theory instructional error analysis" to the subset of cases such as this one, in which no such evidence is introduced. On remand, the superior court should not apply this analytical framework.

## DISPOSITION

The judgment is reversed. The matter is remanded for a section 1170.95, subdivision (d)(3) hearing at which the prosecution bears the burden of proving appellant ineligible for relief beyond a reasonable doubt, as described in the amended text of section 1170.95, subdivision (d)(3) and herein.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MICON, J. [*]

WILLHITE, ACTING P.J.

CURREY, J.

[*]Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.