(Slip Opinion) OCTOBER TERM, 2005 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WASHINGTON *v.* RECUENCO

CERTIORARI TO THE SUPREME COURT OF WASHINGTON

No. 05–83.  Argued April 17, 2006—Decided June 26, 2006

After respondent threatened his wife with a handgun, he was convicted of second-degree assault based on the jury's finding that he had assaulted her "with a deadly weapon."  A "firearm" qualifies as a "deadly weapon" under Washington law, but nothing in the verdict form specifically required the jury to find that respondent had engaged in assault with a "firearm," as opposed to any other kind of "deadly weapon."  Nevertheless, the state trial court applied a 3-year firearm enhancement to respondent's sentence, rather than the 1-year enhancement that specifically applies to assault with a deadly weapon, based on the court's own factual findings that respondent was armed with a firearm.  This Court then decided *Apprendi* v. *New Jersey*, 530 U. S. 466, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *id.,* at 490, and *Blakely* v. *Washington*, 542 U. S. 296, clarifying that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict," id.,* at 303. Because the trial court could not have subjected respondent to a firearm enhancement based only on the jury's finding that respondent was armed with a "deadly weapon," the State conceded a Sixth Amendment *Blakely* violation before the Washington Supreme Court, but urged the court to find the *Blakely* error harmless.  In vacating respondent's sentence and remanding for sentencing based solely on the deadly weapon enhancement, however, the court declared *Blakely* error to be "structural error," which will always invalidate a conviction under *Sullivan* v. *Louisiana,* 508 U. S. 275, 279.

*Held:*

 1. Respondent's argument that this Court lacks power to reverse

because the Washington Supreme Court's judgment rested on adequate and independent state-law grounds is rejected. It is far from clear that respondent is correct that at the time of his conviction, state law provided no procedure for a jury to determine whether a defendant was armed with a firearm, so that it is impossible to conduct harmless-error analysis on the *Blakely* error in his case. The correctness of respondent's interpretation, however, is not determinative of the question the State Supreme Court decided and on which this Court granted review, *i.e.*, whether *Blakely* error can ever be deemed harmless. If respondent's reading of Washington law is correct, that merely suggests that he will be able to demonstrate that the *Blakely* violation *in this particular case* was not harmless. See *Chapman* v. *California*, 386 U. S. 18, 24. But it does not mean that *Blakely* error—which is of the same nature, whether it involves a fact that state law permits to be submitted to the jury or not—is structural, or that this Court is precluded from deciding that question. Thus, the Court need not resolve this open question of Washington law. Pp. 3–4.

2. Failure to submit a sentencing factor to the jury is not "structural" error. If a criminal defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that most constitutional errors are subject to harmless-error analysis. *E.g., Neder* v. *United States*, 527 U. S. 1, 8. Only in rare cases has this Court ruled an error "structural," thus requiring automatic reversal. In *Neder*, the Court held that failure to submit an element of an offense to the jury—there, the materiality of false statements as an element of the federal crimes of filing a false income tax return, mail fraud, wire fraud, and bank fraud, see *id.,* at 20–25—is not structural, but is subject to *Chapman*'s harmless-error rule*, id.,* at 7–20. This case is indistinguishable from *Neder*. *Apprendi* makes clear that "[a]ny possible distinction between an 'element' of a felony . . . and a 'sentencing factor' was unknown . . . during the years surrounding our Nation's founding." 530 U. S., at 478. Accordingly, the Court has treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt. *Id.,* at 483–484. The only difference between this case and *Neder* is that there the prosecution failed to prove the materiality element beyond a reasonable doubt, while here the prosecution failed to prove the "armed with a firearm" sentencing factor beyond a reasonable doubt. Assigning this distinction constitutional significance cannot be reconciled with *Apprendi*'s recognition that elements and sentencing factors must be treated the same. Respondent attempts unpersuasively to distinguish *Neder* on the ground that the jury there returned a guilty verdict on the offenses for which the defendant was sentenced, whereas here the jury returned a guilty verdict only on the offense of

Syllabus

second-degree assault, and an affirmative answer to the sentencing question whether respondent was armed with a deadly weapon. Because Neder's jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt than is the verdict here. See 527 U. S., at 31. Pp. 5–9.

154 Wash. 2d 156, 110 P. 3d 188, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, BREYER, and ALITO, JJ., joined. KENNEDY, J., filed a concurring opinion. STEVENS, J., filed a dissenting opinion. GINSBURG, J., filed a dissenting opinion, in which STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–83

———————

## WASHINGTON, PETITIONER *v.* ARTURO R. RECUENCO

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF WASHINGTON

[June 26, 2006]

JUSTICE THOMAS delivered the opinion of the Court.

Respondent Arturo Recuenco was convicted of assault in the second degree based on the jury's finding that he assaulted his wife "with a deadly weapon." App. 13.  The trial court applied a 3-year firearm enhancement to respondent's sentence based on its own factual findings, in violation of *Blakely* v. *Washington*, 542 U. S. 296 (2004). On appeal, the Supreme Court of Washington vacated the sentence, concluding that *Blakely* violations can never be harmless.  We granted certiorari to review this conclusion, 546 U. S. \_\_\_ (2005), and now reverse.

I

On September 18, 1999, respondent fought with his wife, Amy Recuenco.  After screaming at her and smashing their stove, he threatened her with a gun.  Based on this incident, the State of Washington charged respondent with assault in the second degree, *i.e.*, "intentiona[l] assault . . . with a deadly weapon, to-wit: a handgun." App. 3.  Defense counsel proposed, and the court accepted, a special verdict form that directed the jury to make a specific finding whether respondent was "armed with a deadly

weapon at the time of the commission of the crime." *Id.,* at 13. A "firearm" qualifies as a "'deadly weapon'" under Washington law. Wash. Rev. Code §9A.04.110(6) (2006). But nothing in the verdict form specifically required the jury to find that respondent had engaged in assault with a "firearm," as opposed to any other kind of "deadly weapon." The jury returned a verdict of guilty on the charge of assault in the second degree, and answered the special verdict question in the affirmative. App. 10, 13.

At sentencing, the State sought the low end of the standard range sentence for assault in the second degree (three months). It also sought a mandatory 3-year enhancement because respondent was armed with a "firearm," §9.94A.533(3)(b), rather than requesting the 1-year enhancement that would attend the jury's finding that respondent was armed with a deadly weapon, §9.94A.533(4)(b). The trial court concluded that respondent satisfied the condition for the firearm enhancement, and accordingly imposed a total sentence of 39 months.

Before the Supreme Court of Washington heard respondent's appeal, we decided *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), and *Blakely*, *supra.* In *Apprendi*, we held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U. S., at 490. In *Blakely*, we clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U. S., at 303 (emphasis in original). Because the trial court in this case could not have subjected respondent to a firearm enhancement based only on the jury's finding that respondent was armed with a "deadly weapon," the State conceded before the Supreme Court of Washington that a Sixth Amendment violation occurred under *Blakely*. 154

Wash. 2d 156, 162–164, 110 P. 3d 188, 191 (2005). See also Tr. of Oral Arg. 10–11.

The State urged the Supreme Court of Washington to find the *Blakely* error harmless and, accordingly, to affirm the sentence. In *Washington* v. *Hughes*, 154 Wash. 2d 118, 110 P. 3d 192 (2005), however, decided the same day as the present case, the Supreme Court of Washington declared *Blakely* error to be "'structural' erro[r]" which "'will always invalidate the conviction.'" *Id.,* at 142, 110 P. 3d 205 (quoting *Sullivan* v. *Louisiana,* 508 U. S. 275, 279 (1993)). As a result, the court refused to apply harmless-error analysis to the *Blakely* error infecting respondent's sentence. Instead, it vacated his sentence and remanded for sentencing based solely on the deadly weapon enhancement. 154 Wash. 2d, at 164, 110 P. 3d, at 192.

## II

Before reaching the merits, we must address respondent's argument that we are without power to reverse the judgment of the Supreme Court of Washington because that judgment rested on adequate and independent state-law grounds. Respondent claims that at the time of his conviction, Washington state law provided no procedure for a jury to determine whether a defendant was armed with a firearm. Therefore, he contends, it is impossible to conduct harmless-error analysis on the *Blakely* error in his case. Respondent bases his position on *Hughes*, in which the Supreme Court of Washington refused to "create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court." 154 Wash. 2d, at 151, 110 P. 3d, at 209. Respondent contends that, likewise, the Washington Legislature provided no procedure by which a jury could decide at trial whether a defendant was armed with a firearm, as opposed to a deadly weapon.

It is far from clear that respondent's interpretation of Washington law is correct. See *Washington* v. *Pharr*, 131 Wn. App. 119, 124-125, 126 P. 3d 66, 69 (2006) (affirming the trial court's imposition of a firearm enhancement when the jury's special verdict reflected a finding that the defendant was armed with a firearm). In *Hughes*, the Supreme Court of Washington carefully avoided reaching the conclusion respondent now advocates, instead expressly recognizing that "[w]e are presented only with the question of the appropriate remedy on *remand*—we do not decide here whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial." *Id.,* at 149, 110 P. 3d, at 208. Accordingly, *Hughes* does not appear to foreclose the possibility that an error could be found harmless because the jury which convicted the defendant would have concluded, if given the opportunity, that a defendant was armed with a firearm.

The correctness of respondent's interpretation of Washington law, however, is not determinative of the question that the Supreme Court of Washington decided and on which we granted review, *i.e.,* whether *Blakely* error can ever be deemed harmless. If respondent is correct that Washington law does not provide for a procedure by which his jury could have made a finding pertaining to his possession of a firearm, that merely suggests that respondent will be able to demonstrate that the *Blakely* violation *in this particular case* was not harmless. See *Chapman* v. *California*, 386 U. S. 18, 24 (1967). But that does not mean that *Blakely* error—which is of the same nature, whether it involves a fact that state law permits to be submitted to the jury or not—is structural, or that we are precluded from deciding that question. Thus, we need not resolve this open question of Washington law.[1]

—————

[1] Respondent's argument that, as a matter of *state* law, the *Blakely* v. *Washington,* 542 U. S. 296 (2004), error was not harmless remains open

### III

We have repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, "'most constitutional errors can be harmless.'" *Neder* v. *United States*, 527 U. S. 1, 8 (1999) (quoting *Arizona* v. *Fulminante*, 499 U. S. 279, 306 (1991)). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" 527 U. S., at 8 (quoting *Rose* v. *Clark*, 478 U. S. 570, 579 (1986)). Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal.[2] In such cases, the error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, *supra*, at 9 (emphasis omitted).

We recently considered whether an error similar to that which occurred here was structural in *Neder, supra.* Neder was charged with mail fraud, in violation of 18 U. S. C. §1341; wire fraud, in violation of §1343; bank fraud, in violation of §1344; and filing a false income tax return, in violation of 26 U. S. C. §7206(1). 527 U. S., at 6. At Neder's trial, the District Court instructed the jury that it "'need not consider'" the materiality of any false statements to convict Neder of the tax offenses or bank fraud,

————————

to him on remand.

[2] See *Neder* v. *United States*, 527 U. S. 1, 8 (1999) (citing *Johnson* v. *United States*, 520 U. S. 461, 468 (1997), in turn citing *Gideon* v. *Wainwright*, 372 U. S. 335 (1963) (complete denial of counsel); *Tumey* v. *Ohio*, 273 U. S. 510 (1927) (biased trial judge); *Vasquez* v. *Hillery*, 474 U. S. 254 (1986) (racial discrimination in selection of grand jury); *McKaskle* v. *Wiggins*, 465 U. S. 168 (1984) (denial of self-representation at trial); *Waller* v. *Georgia*, 467 U. S. 39 (1984) (denial of public trial); *Sullivan* v. *Louisiana*, 508 U. S. 275 (1993) (defective reasonable-doubt instruction)).

because materiality "'is not a question for the jury to decide.'" *Ibid.* The court also failed to include materiality as an element of the offenses of mail fraud and wire fraud. *Ibid.* We determined that the District Court erred because under *United States* v. *Gaudin*, 515 U. S. 506 (1995), materiality is an element of the tax offense that must be found by the jury. We further determined that materiality is an element of the mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes as well. *Neder*, 527 U. S., at 20. We nonetheless held that harmless-error analysis applied to these errors, because "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.*, at 9. See also *Schriro* v. *Summerlin*, 542 U. S. 348, 355–356 (2004) (rejecting the claim that *Ring* v. *Arizona*, 536 U. S. 584 (2002), which applied *Apprendi* to hold that a jury must find the existence of aggravating factors necessary to impose the death penalty, was a "'"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding,'" in part because we could not "confidently say that judicial factfinding *seriously* diminishes accuracy").

The State and the United States urge that this case is indistinguishable from *Neder*. We agree. Our decision in *Apprendi* makes clear that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." 530 U. S., at 478 (footnote omitted). Accordingly, we have treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt. *Id.*, at 483–484. The only difference between this case and *Neder* is that in *Neder*, the prosecution failed

to prove the element of materiality to the jury beyond a reasonable doubt, while here the prosecution failed to prove the sentencing factor of "armed with a firearm" to the jury beyond a reasonable doubt. Assigning this distinction constitutional significance cannot be reconciled with our recognition in *Apprendi* that elements and sentencing factors must be treated the same for Sixth Amendment purposes.[3]

Respondent attempts to distinguish *Neder* on the ground that, in that case, the jury returned a guilty verdict on the offense for which the defendant was sentenced. Here, in contrast, the jury returned a guilty verdict only on the offense of assault in the second degree, and an affirmative answer to the sentencing question whether respondent was armed with a deadly weapon. Accordingly, respondent argues, the trial court's action in his case was the equivalent of a directed verdict of guilt on an offense (assault in the second degree while armed with a firearm) greater than the one for which the jury convicted him (assault in the second degree while armed with any deadly weapon). Rather than asking whether the jury would have returned the same verdict absent the error, as in *Neder*, respondent contends that applying harmless-error analysis here would "'hypothesize a guilty verdict that [was] never in fact rendered,'" in violation of the jury-trial guarantee. Brief for Respondent at 27 (quoting *Sul-*

—————

[3] Respondent also attempts to evade *Neder* by characterizing this as a case of charging error, rather than of judicial factfinding. Brief for Respondent 16–19. Because the Supreme Court of Washington treated the error as one of the latter type, we treat it similarly. See 154 Wash. 2d 156, 159–161, 110 P. 3d 188, 189–190 (2005) (considering "whether imposition of a firearm enhancement without a jury finding that Recuenco was armed with a firearm beyond a reasonable doubt violated Recuenco's Sixth Amendment right to a jury trial as defined by *Apprendi* v. *New Jersey,* 530 U. S. 466 [(2000)], and its progeny," and whether the *Apprendi* and *Blakely* error, if uninvited, could "be deemed harmless").

*livan*, 508 U. S., at 279).

We find this distinction unpersuasive. Certainly, in *Neder*, the jury purported to have convicted the defendant of the crimes with which he was charged and for which he was sentenced. However, the jury was precluded "from making a finding on the *actual* element of the offense." 527 U. S., at 10. Because Neder's jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt of the crimes for which the defendant was sentenced than is the verdict here. See *id.,* at 31 (SCALIA, J., concurring in part and dissenting in part) ("[S]ince all crimes require proof of more than one element to establish guilt . . . it follows that trial by jury means determination by a jury that *all elements* were proved. The Court does not contest this"). Put another way, we concluded that the error in *Neder* was subject to harmless-error analysis, even though the District Court there not only failed to submit the question of materiality to the jury, but also mistakenly concluded that the jury's verdict was a complete verdict of guilt on the charges and imposed sentence accordingly. Thus, in order to find for respondent, we would have to conclude that harmless-error analysis would apply if Washington had a crime labeled "assault in the second degree while armed with a firearm," and the trial court erroneously instructed the jury that it was not required to find a deadly weapon or a firearm to convict, while harmless error does not apply in the present case. This result defies logic.[4]

_____

[4] The Supreme Court of Washington reached the contrary conclusion based on language from *Sullivan*. See *Washington* v. *Hughes*, 154 Wash. 2d 118, 144, 110 P. 3d 192, 205 (2005) ("'There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object,* so to speak, upon which harmless-error scrutiny can

\*    \*    \*

Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error. Accordingly, we reverse the judgment of the Supreme Court of Washington, and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

—————

operate'" (quoting *Sullivan*, 508 U. S., at 279–280)). Here, as in *Neder*, "this strand of reasoning in *Sullivan* does provide support for [respondent]'s position." 527 U. S., at 11. We recognized in *Neder*, however, that a broad interpretation of our language from *Sullivan* is inconsistent with our case law. 527 U. S., at 11–15. Because the jury in *Neder*, as here, failed to return a complete verdict of guilty beyond a reasonable doubt, our rejection of Neder's proposed application of the language from *Sullivan* compels our rejection of this argument here.

# SUPREME COURT OF THE UNITED STATES

───────────

## No. 05–83

───────────

## WASHINGTON, PETITIONER *v.* ARTURO R. RECUENCO

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF WASHINGTON

### [June 26, 2006]

JUSTICE KENNEDY, concurring.

The opinions for the Court in *Apprendi* v. *New Jersey,* 530 U. S. 466 (2000), *Blakely* v. *Washington,* 542 U. S. 296 (2004), and their progeny were accompanied by dissents. The Court does not revisit these cases today, and it describes their holdings accurately. On these premises, the Court's analysis is correct. Cf. *Ring* v. *Arizona,* 536 U. S. 584, 613 (2002) (KENNEDY, J., concurring). With these observations I join the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–83

_____

## WASHINGTON, PETITIONER *v.* ARTURO R. RECUENCO

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF WASHINGTON

[June 26, 2006]

JUSTICE STEVENS, dissenting.

Like *Brigham City* v. *Stuart*, 547 U. S. \_\_\_ (2006), and *Kansas* v. *Marsh*, 548 U. S. \_\_\_ (2006), this is a case in which the Court has granted review in order to make sure that a State's highest court has not granted its citizens any greater protection than the bare minimum required by the Federal Constitution. Ironically, the issue in this case is not whether respondent's federal constitutional rights were violated—that is admitted—it is whether the Washington Supreme Court's chosen remedy for the violation is mandated by federal law. As the discussion in Part II of the Court's opinion demonstrates, whether we even have jurisdiction to decide that question is not entirely clear. But even if our expansionist post-*Michigan* v. *Long* jurisprudence supports our jurisdiction to review the decision below, see 463 U. S. 1032 (1983), there was surely no need to reach out to decide this case. The Washington Supreme Court can, of course, reinstate the same judgment on remand, either for the reasons discussed in Part II of the Court's opinion, see *ante*, at 4, and n. 1, or because that court chooses, as a matter of state law, to adhere to its view that the proper remedy for *Blakely* errors, see *Blakely* v. *Washington,* 542 U. S. 296 (2004), is automatic reversal of the unconstitutional portion of a defendant's sentence. Moreover, because the Court does not

address the strongest argument in respondent's favor—namely, that *Blakely* errors are structural because they deprive criminal defendants of sufficient notice regarding the charges they must defend against, see *ante*, at 7, n. 3—this decision will have a limited impact on other cases.

As I did in *Brigham City* and *Marsh*, I voted to deny certiorari in this case. Given the Court's decision to reach the merits, however, I would affirm for the reasons stated in JUSTICE GINSBURG's opinion, which I join.

# SUPREME COURT OF THE UNITED STATES

———————

## No. 05–83

———————

## WASHINGTON, PETITIONER *v.* ARTURO R. RECUENCO

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF WASHINGTON

[June 26, 2006]

JUSTICE GINSBURG, with whom JUSTICE STEVENS joins, dissenting.

Between trial and sentencing, respondent Arturo Recuenco's prosecutor switched gears. The information charged Recuenco with assault in the second degree, and further alleged that at the time of the assault, he was armed with a deadly weapon. App. 3. Without enhancement, the assault charge Recuenco faced carried a sentence of 3 to 9 months, *id.*, at 15; Wash. Rev. Code §§9.94A.510, 9A.36.021(1)(c) (2004); the deadly weapon enhancement added one mandatory year to that sentence, §9.94A.533(4)(b).[1] The trial judge instructed the jury on both the assault charge and the deadly weapon enhancement. App. 7, 8. In connection with the enhancement, the judge gave the jurors a special verdict form and instructed them to answer "Yes or No" to one question only: "Was the defendant . . . armed with a deadly weapon at the time of the commission of the crime of Assault in the Second Degree?" *Id.*, at 13. The jury answered: "Yes." *Ibid.*

Because the deadly weapon Recuenco held was in fact a

———————

[1] Since Recuenco was charged, some of the relevant statutory provisions have been renumbered, without material revision. For convenience, we follow the Court's and the parties' citation practice and refer to the current provisions.

handgun, the prosecutor might have charged, as an alternative to the deadly weapon enhancement, that at the time of the assault, Recuenco was "armed with a firearm." That enhancement would have added three mandatory years to the assault sentence. §9.94A.533(3)(b). The information charging Recuenco, however, did not allege the firearm enhancement. The jury received no instruction on it and was given no special verdict form posing the question: Was the defendant armed with a firearm at the time of the commission of the crime of Assault in the Second Degree? See 154 Wash. 2d 156, 160, 110 P. 3d 188, 190 (2005) ("The jury was not asked to, and therefore did not, return a special verdict that Recuenco committed the assault while armed with a firearm.").

The prosecutor not only failed to charge Recuenco with assault while armed with a firearm and to request a special verdict tied to the firearm enhancement. He also informed the court, after the jury's verdict and in response to the defendant's motion to vacate: "The method under which the state is alleging and the jury found the assaul[t] committed was by use of a deadly weapon." App. 35. Leaving no doubt, the prosecutor further clarified: "[I]n the crime charged and the enhancement the state alleged, there is no elemen[t] of a firearm. The element is assault with a deadly weapon." *Ibid.* Recuenco was thus properly charged, tried, and convicted of second-degree assault while armed with a deadly weapon. It was a solid case; no gap was left to fill.

Nevertheless, at sentencing, the prosecutor requested, and the trial judge imposed, a three-year mandatory enhancement for use of a firearm. *Ibid.* Recuenco objected to imposition of the firearm enhancement "without notice . . . and a jury finding." 154 Wash. 2d, at 161, 110 P. 3d, at 190. Determining that there was no warrant for elevation of the charge once the trial was over, the Washington Supreme Court "remand[ed] for resentencing based

solely on the deadly weapon enhancement which is supported by the jury's special verdict." *Id.*, at 164, 110 P. 3d, at 192. I would affirm that judgment. No error marred the case presented at trial. The prosecutor charged, and the jury found Recuenco guilty of, a complete and clearly delineated offense: "assault in the second degree, being armed with a deadly weapon." The "harmless-error" doctrine was not designed to allow dislodgment of that error-free jury determination.

I

Under Washington law and practice, assault with a deadly weapon and assault with a firearm are discrete charges, attended by discrete instructions. As the Court observes, *ante*, at 2, a charge of second-degree assault while armed with a deadly weapon, §9.94A.533(4)(b), subjects a defendant to an additional year in prison, and a charge of second-degree assault while armed with a firearm, §9.94A.533(3)(b), calls for an additional term of three years. "Deadly weapon," Washington law provides, encompasses any "implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death," including, *inter alia*, a "pistol, revolver, or any other firearm." §9.94A.602. "Firearm" is defined, more particularly, to mean "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." §9.41.010(1). A handgun (the weapon Recuenco held), it thus appears, might have been placed in both categories.[2]

_____

[2] But see App. 38. When the prosecutor, post-trial but presentence, made it plain that he was seeking the three-year firearm enhancement rather than the one-year deadly weapon enhancement, Recuenco objected that the statutory definition of "firearm" had not been read to the jury, and that the prosecutor had submitted no evidence showing that Recuenco's handgun was "designed to fire a projectile by explosive

Washington Pattern Jury Instructions, Criminal (WPIC) (West 2005 Supp.), set out three instructions for cases in which "an enhanced sentence is sought on the basis that the defendant was armed with a 'deadly weapon,'" WPIC §2.06 (note on use): Deadly Weapon–General, §2.07; Deadly Weapon–Knife, §2.07.01; Deadly Weapon–Firearm, §2.07.02. When the prosecutor seeks an enhancement based on the charge that "the defendant was armed with a 'firearm,'" §2.06, trial courts are directed to a different instruction, one keyed to the elevated enhancement, §2.10.01.

Matching special verdict forms for trial-court use are also framed in the WPIC. When a "deadly weapon" charge is made, whether generally or with a knife or firearm, the prescribed form asks the jury: "Was the defendant (defendant's name) armed with a deadly weapon at the time of the commission of the crime [in Count __]?" §190.01. When a "firearm" charge is made, the jury is asked: "Was the defendant (defendant's name) armed with a firearm at the time of the commission of the crime [in Count __]?" §190.02.

In Recuenco's case, the jury was instructed, in line with the "deadly weapon" charge made by the prosecutor, App. 6–7, and the special verdict form given to the jury matched that instruction. The form read:

> "We, the jury, return a special verdict by answering as follows:
>
> "Was the defendant ARTURO R. RECUENCO armed with a deadly weapon at the time of the commission of the crime of Assault in the Second Degree?
>
> "ANSWER: [YES] (Yes or No)." *Id.*, at 13.

No "firearm" instruction, WPIC §2.10.01 (West 2005

─────────

such as gunpowder." *Ibid.*

Supp.), was given to Recuenco's jury, nor was the jury given the special verdict form matching that instruction, §190.02; see *supra*, at 3–4, n. 2.

## II

In the Court's view, "this case is indistinguishable from *Neder* [v. *United States,* 527 U. S. 1 (1999)]." *Ante*, at 6. In that case, the trial judge made a finding necessary to fill a gap in an incomplete jury verdict. One of the offenses involved was tax fraud; the element missing from the jury's instruction was the materiality of the defendant's alleged misstatements. Under the mistaken impression that materiality was a question reserved for the court, the trial judge made the finding himself. In fact in *Neder*, materiality was not in dispute. See 527 U. S., at 7; see also *id.*, at 15 (Neder "d[id] not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed."). "Reversal without any consideration of the effect of the error upon the verdict would [have] sen[t] the case back for retrial—a retrial not focused at all on the issue of materiality, but on contested issues on which the jury [had been] properly instructed." *Ibid*. The Court concluded that the Sixth Amendment did not command that recycling.

Here, in contrast to *Neder*, the charge, jury instructions, and special verdict contained no omissions; they set out completely all ingredients of the crime of second-degree assault with a deadly weapon. There is no occasion for any retrial, and no cause to displace the jury's entirely complete verdict with, in essence, a conviction on an uncharged greater offense.

## III

The standard form judgment completed and signed by the trial judge in this case included the following segment:

"**SPECIAL VERDICT OR FINDING(S)**:

"(b) [  ] A special verdict/finding for being armed with a **Firearm** was rendered on Count(s) ___.

"(c) [**X**] A special verdict/finding for being armed with a **Deadly Weapon** other than a firearm was rendered on Count(s) I." App. 14.

Count I was identified on the judgment form as "ASSAULT IN THE 2ND DEGREE." *Ibid.* Despite the "X" placed next to the "Deadly Weapon" special verdict/finding, and the blanks left unfilled in the "Firearm" special verdict/finding lines, the trial judge imposed a sentence of 39 months (3 months for the assault, 36 months as the enhancement).

Had the prosecutor alternatively charged both enhancements, and had the judge accurately and adequately instructed on both, giving the jury a special verdict form on each of the two enhancements, the jury would have had the prerogative to choose the lower enhancement. Specifically, the jury could have answered "Yes" (as it in fact did, see *supra*, at 4) to the "armed with a deadly weapon" inquiry while returning no response to the alternative "firearm" inquiry. See, *supra*, at 3, and n. 2 (Washington's statutory definition of "deadly weapon" overlaps definition of "firearm"); cf. *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 573 (1977) ("[R]egardless of how overwhelmingly the evidence may point in that direction[, t]he trial judge is . . . barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused."). Today's decision, advancing a greater excluded (from jury control) offense notion, diminishes the jury's historic capacity "to prevent the punishment from getting too far out of line with the crime." *United States* v. *Maybury*, 274 F. 2d 899, 902 (CA2 1960) (Friendly, J.); see also *Blakely* v. *Washington,* 542 U. S. 296, 306 (2004) (recognizing jury's role "as circuitbreaker in the State's machinery of justice").

GINSBURG, J., dissenting

\*    \*    \*

In sum, Recuenco, charged with one crime (assault with a deadly weapon), was convicted of another (assault with a firearm), *sans* charge, jury instruction, or jury verdict. That disposition, I would hold, is incompatible with the Fifth and Sixth Amendments, made applicable to the States by the Fourteenth Amendment. I would therefore affirm the judgment of the Supreme Court of the State of Washington.