CANTIL-SAKAUYE, C. J.,
Concurring and Dissenting. — I concur in the statutory interpretation in parts I through III of the majority opinion. But I respectfully dissent from the remainder of the opinion concerning the standard of harmless error review applicable to the state law errors that occurred in this case and the proper application of that standard. Unlike the federal Constitution, which contains no provision addressing the subject of harmless error in a judicial proceeding, the California Constitution contains an explicit provision directed to that subject, providing that “[n]o judgment shall be set aside ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” (Cal. Const., art. VI, § 13 (hereafter article VI, section 13).) Notwithstanding this explicit state constitutional provision generally eschewing the application of an automatic or reversible per se harmless error standard to state law error, today’s opinion, for the first time, holds that an automatic reversal rule should apply to the trial court’s failure to advise a defendant in a mentally disordered offender (MDO) commitment extension proceeding of the statutory right to a jury trial and to obtain the defendant’s personal waiver of a jury trial. It does so on the theory that such errors always constitute “a miscarriage of justice” because the errors assertedly totally denied defendant the right to a jury trial. (Maj. opn., ante, at pp. 1132-1134.)
Contrary to the claim of the majority, however, we have no occasion in this case to decide whether the total denial of the statutory right to a jury trial in an MDO proceeding automatically constitutes a “miscarriage of justice” within the meaning of article VI, section 13. Whether or not the total denial of the right to a jury trial in such a proceeding invariably constitutes a miscarriage of justice, describing the errors in this case as the total denial of a jury trial is inaccurate and gives a misleading impression regarding the nature and severity of the actual errors at issue here. This matter is a civil commitment proceeding, not a criminal prosecution, and this is not a case in which a defendant who expressed a wish to be tried by a jury was wrongfully denied that request and was required to face trial by the court. Nor is it a case in which an unrepresented defendant, unaware of the right to be tried by a jury, was left in the dark and subjected to a court trial while ignorant of his or *1144 her jury trial right. Instead, this is a case in which defendant was represented by counsel, who, undoubtedly with full knowledge of his client’s right to be tried by a jury, intentionally requested that the matter be heard by the court rather than a jury. The defect here was not in wrongfully depriving defendant of the right to a jury trial in an MDO commitment extension proceeding, but rather the much less serious mistakes of failing to advise defendant personally of the statutory right to a jury trial and to obtain an on-the-record waiver of that right from defendant personally rather than from defendant’s counsel.
I agree with the majority that the trial court erred in these respects. However, these failures are of an entirely different, and less serious, magnitude than a wholesale deprivation of the right to a jury trial in a criminal trial or in an MDO commitment extension proceeding; they are not properly viewed as inevitably giving rise to a “miscarriage of justice” (art. VI, § 13) that calls for automatic reversal of a judgment without regard to the actual effect of the error on the fairness of the proceeding or the outcome of the case. Contrary to the majority’s claim, these are not the types of errors whose prejudicial effect defies detection or measurement. Instead, when a defendant’s counsel has concluded that it is in the defendant’s interest to be tried by the court rather than a jury, it will often be possible to realistically assess whether it is reasonably probable that the defendant, if personally advised of the right to a jury trial in an MDO commitment extension proceeding and asked whether he or she waives that right, would have chosen to be tried by a jury rather than the court. In my view, to require automatic reversal of a judgment for these types of procedural errors, where it is highly unlikely that the defendant was unaware of the right to a jury trial or would have requested a jury trial over his or her counsel’s contrary advice, fails to respect the history and purpose of California’s distinct constitutional harmless error provision. Accordingly, I dissent from this aspect of the majority opinion. And, considering the case as a whole, I believe it is clear that it is not reasonably probable that the trial court errors affected the outcome of this proceeding. Accordingly, I would find the trial court errors harmless under the applicable harmless error standard and would affirm the judgment.
I. Background
Defendant Bruce Lee Blackburn was convicted of first degree burglary and forcible false imprisonment after entering the home of an 85-year-old woman and assaulting her in bed while he was naked. He was eventually declared an MDO and committed to Atascadero State Hospital as a condition of parole. After two extensions of Blackburn’s commitment, the Santa Clara County District Attorney filed a third petition for recommitment, which Blackburn elected to oppose and as to which he requested a trial. The trial court failed to advise Blackburn of his right to a jury trial and relied on his counsel’s request to waive jury trial in favor of a court or bench trial.
*1145 At that bench trial, the prosecutor presented testimony of an expert who diagnosed Blackburn as having “schizoaffective disorder, bipolar type” that was not in remission despite his medication and that the condition was the same disorder involved in his prior violent crime. Blackburn experienced delusions, paranoia, and impulsivity that the expert believed would pose a danger to others. The expert further noted that Blackburn had failed to formulate a viable discharge plan. Blackburn did not contest the expert’s testimony, and he neither testified nor offered any defense evidence. The trial court sustained the petition and extended Blackburn’s commitment, for one year pursuant to Penal Code section 2972, subdivision (e).[1]
For the first time on appeal, Blackburn complained that he was denied his statutory right to a jury trial because he was not personally advised of that right and did not personally waive that right. On appeal, Blackburn does not contend that his bench trial was conducted by a biased judge or point to anything that suggests that if advised of the right to a jury trial and asked if he wanted to invoke or waive that right, he would have chosen to be tried by a jury rather than by the court. Nonetheless, today’s opinion concludes that the trial court’s failure to personally advise Blackburn of his right to a jury trial and to obtain a personal waiver of that right from Blackburn is sufficient to require reversal of the judgment without application of the ordinary harmless error standard mandated by article VI, section 13. For the reasons discussed below, I dissent.
II. Discussion
A. The standard of review for error under state law applicable in this case
The rules governing the reversal of judgments based on state law error are well settled. We have previously stated: “Our state Constitution provides that ‘[n]o judgment shall be set aside, or new trial granted, in any cause, ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.’ (Cal. Const., art. VI, § 13.) ‘The effect of this provision is to eliminate any presumption of injury from error, and to require that the appellate court examine the evidence to determine whether the error did in fact prejudice the defendant. Thus, reversible error is a relative concept, and whether a slight or gross error is ground for reversal depends on the circumstances in each case.’ [Citation.]” (Cassim v. Allstate Ins. Co. (2004) 33 Cal.4th 780, 800 [16 Cal.Rptr.3d 374, 94 P.3d 513], italics added.)
*1146 As our past decisions have recognized, the governing harmless error provision was added to our state Constitution in 1911 in response to earlier California decisions that had applied a reversible per se rule to relatively minor procedural errors in criminal cases, overturning criminal convictions under circumstances even though it was clear, as a realistic matter, that the error had not affected the result in the case. (People v. Cahill (1993) 5 Cal.4th 478, 490-491 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (Cahill), citing People v. O’Bryan (1913) 165 Cal. 55, 64 [130 P. 1042].) In light of this explicit California constitutional provision, our decisions have long made it clear that, as a general matter, “ ‘a “miscarriage of justice” should be declared only when the court, “after an examination of the entire cause, including the evidence,” is of the “opinion” that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.’ ” (Cassim v. Allstate Ins. Co., supra, 33 Cal.4th at p. 800, quoting People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
Today’s opinion acknowledges this general rule, but it fails to apply it in this case. Instead, the majority maintains that this case should be viewed as falling within an established, but limited, exception to the general rule, applicable to errors that are so fundamental that they inevitably amount to a “miscarriage of justice” within the meaning of article VI, section 13, regardless of how unlikely it may be that the errors actually affected the outcome. (See, e.g., Cahill, supra, 5 Cal.4th at pp. 487-493; see also id. at pp. 501-502 [describing this category as involving “fundamental ‘structural defects’ in the judicial proceedings, analogous to those to which the United States Supreme Court referred in [Arizona v. Fulminante (1991) 499 U.S. 279 [113 L.Ed.2d 302, 111 S.Ct. 1246]”].) The majority reaches its conclusion by characterizing the errors in this case as the “denial of a jury trial” (maj. opn., ante, at p. 1134) and by analogizing the errors to the denial of a felony defendant’s right to a jury trial in a criminal proceeding (id. at pp. 1133-1134).
Additionally, Justice Liu’s separate opinion concurring in his majority opinion more broadly contends that the total denial of the right to a jury trial always constitutes a per se miscarriage of justice, apparently without regard to whether the proceedings are civil or criminal in nature or whether the particular right to jury trial is constitutionally based or is purely statutory. For this proposition, he explores the text of article VI, section 13 and its history and purpose. Relying on case law involving felony criminal prosecutions, the separate concurring opinion concludes that the statutory errors at issue here denied Blackburn “an adequate measure of procedural justice” thereby depriving him of his right to a jury trial. (Cone. opn. of Liu, J., ante, at p. 1142.)
*1147 But we need not establish such a broad rule for all judicial proceedings held in this state. In this civil matter, the advisement and waiver errors are simply procedural errors of a statutory nature, and article VI, section 13 states that judgments cannot be set aside “for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” (Ibid.) Both the majority opinion and Justice Liu’s concurring opinion erroneously assume that the procedural errors in this matter had the automatic effect of denying Blackburn his statutory right to a jury trial without regard to examining the case-by-case circumstances of whether the statutory errors affected the decision to proceed with a bench trial.
As already noted, however, the errors in this case cannot accurately be described as the denial of a jury trial. This is not an instance in which an MDO defendant requested to be tried by a jury and the trial court denied the request and required the defendant’s case to be decided by the court (either because the court was unaware of the statutory right to a jury trial or because the defendant’s counsel objected to a jury trial and the court was of the view that counsel, rather than his or her client, controlled the decision regarding a jury trial). Nor is this a case in which an MDO defendant was not represented by counsel and failed to request a jury trial because he or she was unaware of the right to be tried by a jury and was not advised of that right. Instead, this is a case in which defendant was represented by counsel and defendant’s counsel, presumably well aware of his client’s right to a jury trial, explicitly requested that the case be heard by the court rather than by a jury. The errors here were simply the court’s failure to advise defendant personally of the right to a jury trial and to elicit an explicit waiver of that right from defendant personally.
To be sure, an MDO defendant’s statutory rights to be personally advised by the court of the right to jury trial and to be asked personally whether he or she wishes to waive that right are unquestionably meaningful and significant safeguards. But the beneficial nature of these safeguards does not mean that a proceeding in which these safeguards have not been provided totally denies a defendant the right to a jury trial or deprives a defendant of a fair procedure.
The fact that a trial court in an MDO proceeding fails to advise the defendant personally of the statutory right to a jury trial and to elicit an express on-the-record waiver of that right from the defendant personally does not mean that the defendant is unaware of the availability of a jury trial or that he or she wishes to be tried by a jury rather than the court. The applicable statutory requirements that the court personally advise an MDO defendant of the right to jury trial and obtain an explicit personal waiver from *1148 the defendant do not distinguish between cases in which the defendant is represented by counsel or is unrepresented, but when, as here, a defendant is represented by counsel, the statutory requirements generally operate simply as backup or prophylactic safeguards. When a defendant is represented by counsel, it is generally reasonable to assume that counsel has previously discussed the option of a jury trial with the defendant. (See Conservatorship of Mary K. (1991) 234 Cal.App.3d 265, 272 [285 Cal.Rptr. 618] [“in the absence of evidence to the contrary, the court must assume counsel is competent” and had discussed the decision to waive the statutory right to jury trial with his client].) And when counsel requests a court trial and the defendant does not object, it is also reasonable, as a practical matter, to infer that the defendant agrees with the request for a court, rather than a jury, trial. Moreover, even if defense counsel has not discussed the statutory jury trial right with his client and the client is otherwise unaware of that right, the fact that the case has been tried by the court rather than by a jury cannot be reasonably characterized as the result of the trial court’s denial of the defendant’s right to a jury trial. Instead, the court trial is the result of defense counsel’s determination that it is in the defendant’s best interest to be tried by the court, rather than by a jury, a determination that, in the absence of very unusual circumstances, the defendant, if asked directly, is not likely to have rejected. Contrary to the majority’s assertion (maj. opn., ante, at p. 1134), an on-the-record waiver of a jury trial by the defendant personally is not the only way to tell, realistically as opposed to theoretically, whether a defendant who desired a jury trial was denied that opportunity. In short, the errors that occurred in this case are much different from, and cannot properly be equated with, a complete denial or deprivation of the right to a jury trial.
It is true, of course, that it is possible that, if personally advised by the trial court of the right to a jury trial and asked whether he or she waives that right, a defendant who is represented by counsel may insist upon being tried by a jury notwithstanding his counsel’s contrary advice. But, under article VI, section 13, a court may not presume that these types of statutory errors are prejudicial. Instead, it must undertake a realistic examination of all the circumstances to determine whether it is reasonably probable that the errors affected the outcome of the case. (People v. Breverman (1998) 19 Cal.4th 142, 173 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [“Article VI, section 13 eliminated the prior appellate presumption that any substantial trial error causes a miscarriage of justice.”].)
In a variety of contexts, past California decisions have held that the absence of similar procedural safeguards — that is, advice from the trial court regarding the existence of a fundamental right delivered in person to the defendant and an explicit personal waiver of that right by the defendant— does not constitute the type of fundamental structural defect that demonstrates *1149 that the defendant has not been accorded a fair and just procedure and for that reason invariably constitutes a “miscarriage of justice” for purposes of article VI, section 13.
For example, as a matter of state and federal constitutional law, a criminal defendant has a fundamental right to be physically present during all parts of a trial in which the defendant faces felony criminal charges. (Kentucky v. Stincer (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 107 S.Ct. 2658]; People v. Concepcion (2008) 45 Cal.4th 77, 81 [193 P.3d 1172, 84 Cal.Rptr.3d 418].) California, by statute, has long required a trial court to obtain a written waiver in open court from the defendant whenever the defendant is not present during felony trial proceedings. (§ 977, subd. (b)(2) [setting out the specific form that a personal waiver by a defendant must take].) Nonetheless, in cases in which the defendant is represented by counsel, California decisions have repeatedly and uniformly held that even if the defendant has not been personally advised by the court of his or her right to be present and even when the trial court has erred in failing to obtain the statutorily required personal waiver of that right from the defendant, the error is purely statutory and does not itself constitute a miscarriage of justice. Instead, the trial court error is subject to the ordinary harmless error standard mandated by the California Constitution. (People v. Moon (2005) 37 Cal.4th 1, 20-21 [the lack of a written waiver is reviewed for error under People v. Watson, supra, 46 Cal.2d 818 (Watson)] rejecting the argument that there was no showing that the defendant understood the nature of the right he was waiving]; People v. Weaver (2001) 26 Cal.4th 876, 968 [111 Cal.Rptr.2d 2, 29 P.3d 103] [capital defendant’s absence during the playing of a videotape to the jury was “merely statutory” error; reviewed under Watson]; People v. Jackson (1996) 13 Cal.4th 1164, 1211 [56 Cal.Rptr.2d 49, 920 P.2d 1254] [error in capital defendant’s one-day absence during the taking of testimony was “of a purely statutory dimension”; reviewed under Watson].)
Similarly, past California decisions have held that even though defense counsel ordinarily has control over what witnesses to present in a criminal proceeding, a defendant in a criminal proceeding has a fundamental constitutional right to testify on his or her own behalf, even when the defendant is represented by counsel and counsel does not want to call the defendant as a witness. (People v. Lucas (1995) 12 Cal.4th 415, 444 [48 Cal.Rptr.2d 525, 907 P.2d 373]; People v. Lucky (1988) 45 Cal.3d 259, 282 [247 Cal.Rptr. 1, 753 P.2d 1052]; People v. Robles (1970) 2 Cal.3d 205, 214-215 [85 Cal.Rptr. 166, 466 P.2d 710].) Nonetheless, the governing decisions have not held that a defendant has been denied the right to testify in his or her own behalf simply because the trial court has not personally advised the defendant of that right and has not elicited a personal waiver of that right from the defendant. Instead, the decisions have found a violation of a defendant’s right to testify over counsel’s contrary advice only when the defendant’s desire to testify has *1150 been brought to the trial court’s attention and the court has denied the defendant the opportunity to testify. (See, e.g., In re Horton (1991) 54 Cal.3d 82, 95 [284 Cal.Rptr. 305, 813 P.2d 1335] [“courts may'assume that counsel’s waiver reflects the defendant’s consent in the absence of an express conflict”; “there is no duty to admonish and secure an on the record waiver unless the conflict comes to the court’s attention”].) In the absence of the defendant’s invocation of the right to testify, we have rejected a defendant’s claim, on appeal, that his conviction should be automatically reversed because the trial court did not advise him of his right to testify over his counsel’s objection or obtain a waiver of that right. (People v. Bradford (1997) 15 Cal.4th 1229, 1331-1333 [65 Cal.Rptr.2d 145, 939 P.2d 259].)
The majority does not deny that it is applying an automatic or reversible per se rule to a trial court’s failure to obtain an explicit, on-the-record personal waiver of a jury trial by defendant (maj. opn., ante, at p. 1135), but maintains that it is not applying an automatic reversal rule when the trial court’s error is solely in failing to advise a defendant of the right to a jury trial (maj. opn., ante, at p. 1136). In that circumstance, according to the majority, a trial court’s acceptance of a defendant’s personal waiver without an express advisement can be harmless “if the record affirmatively shows, based on the totality of the circumstances, that the defendant’s waiver was knowing and voluntary.” (Ibid.) The majority emphasizes that, under its rule, “the requirement of an affirmative showing means that no valid waiver may be presumed from a silent record.” (Ibid.)
Even in the limited context in which the majority’s harmless error rule applies, however, the novel and very restrictive harmless error rule it fashions bears no resemblance to the ordinary harmless error standard set forth in Watson and applied in prior cases. The majority’s harmless error test does not focus on all of the relevant circumstances to determine whether or not it is reasonably probable that a trial court’s failure to personally advise an MDO defendant of the right to jury trial actually affected the outcome of the case. For example, the majority test does not permit an appellate court to find that the advisement error did not affect the outcome and does not warrant reversal, either (1) because it is not reasonably probable that, if so advised, the defendant would have requested a jury trial over counsel’s advice, or (2) because, even if the record does not affirmatively show that the defendant explicitly waived a jury, it is reasonable to infer that the defendant implicitly waived a jury trial when the defendant’s past experience indicates he or she was aware of the right to a jury trial and the defendant raised no objection when defense counsel requested a court trial. In short, even in this limited context, the majority pays no heed to the well-established California harmless error jurisprudence.
*1151 Consequently, in my view it is clear that the type of errors at issue here may not properly be treated as reversible per se, but rather are subject to the ordinary harmless error standard embodied in article VI, section 13.[2]
B. MDO proceedings are not governed by the right to a jury trial under the federal or state Constitution nor are they equivalent to criminal trials
Today’s opinion does not realistically come to grips with the difference between the limited errors that occurred in this case and a complete deprivation of the right to jury trial that would arise when a defendant who expresses a wish to be tried by a jury is denied that right. The majority, however, does cite one case — People v. Ernst (1994) 8 Cal.4th 441 [34 Cal.Rptr.2d 238, 881 P.2d 298] (Ernst) — in which a criminal conviction was reversed because the trial court had not elicited an express waiver of the right to jury trial from the defendant personally, even though the defendant was represented by counsel and counsel had clearly stated that both he and the defendant agreed to waive a jury trial.
Unlike the present case, however, Ernst concerned the defendant’s right to a jury trial in a criminal prosecution derived from the federal and state Constitutions, not a state statute. In concluding that reversal was required, the court in Ernst relied upon the very specific language of article I, section 16 of the California Constitution, which declares that “ ‘[a] jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant’s counsel.’ ” (Ernst, supra, 8 Cal.4th at p. 445.) The specific language of article I, section 16 that was crucial in Ernst— explicitly requiring a jury waiver to be expressed in open court by both the defendant’s counsel and the defendant — does not apply outside the criminal context. In contrast to a criminal case, article I, section 16 provides that “[i]n a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute.” Here, although the governing statute contemplates waiver by the defendant in an MDO proceeding, it does not state that the waiver must be expressed in open court by the defendant.[3]
*1152 Even in the criminal context, past decisions of this court have held that in circumstances in which a criminal defendant’s right to a jury trial of an issue rests on a statutory rather than a constitutional basis, errors relating to the statutory jury trial right are not prejudicial per se but rather are subject to harmless error review. For example, in People v. Marshall (1996) 13 Cal.4th 799 [55 Cal.Rptr.2d 347, 919 P.2d 1280] (Marshall), the trial court failed to permit the jury to make a death-eligibility finding on a multiple-murder special-circumstance allegation as required by section 190.4, the applicable California death penalty statute.[4] On appeal, this court rejected the argument that the trial court error in failing to submit that issue to the jury was a structural defect and reversible per se, and held instead that the failure to submit the special circumstance allegation to the jury was “susceptible to quantitative assessment because the record compels the conclusion the error had no effect on the outcome of the trial.” (Marshall, supra, at pp. 851-852.) We explained that because the jury had properly convicted the defendant of three counts of murder, “there is no possibility this jury would have found defendant not death-eligible had the special circumstance allegation been submitted to it.” (Id. at p. 852.) Accordingly, we affirmed the judgment of death.
Similarly, in Epps, supra, 25 Cal.4th 19, the trial court failed to permit a jury trial on several prior-conviction allegations that enhanced the defendant’s sentence by five years and additional enhancements under the three strikes law. We adhered to article VI, section 13, and again rejected the argument that the error was a structural defect requiring automatic reversal “because the *1153 right to a jury trial of the prior conviction allegations in this case is purely a creature of state statutory law.” (Epps, supra, at p. 29.) We concluded that the error was harmless considering that “the only factual question for the jury was whether the prior convictions occurred, and defendant did not question this fact at his prior convictions trial” and “the prior conviction records were official government documents clearly describing the alleged convictions.” (Id. at pp. 29-30.)
The majority seems to find significance in the fact that section 2972 affords defendants in MDO commitment proceedings protections “borrowed directly from the criminal context.” (Maj. opn., ante, at p. 1135.) The majority notes that in an MDO proceeding the statute requires a unanimous jury verdict and proof beyond a reasonable doubt. (§ 2972, subd. (a).)
But simply because MDO commitment proceedings share some protections afforded to defendants in criminal prosecutions does not justify departure from the generally applicable harmless error rule mandated by the California Constitution. The majority cites no case to justify this approach. If this were a valid reason to apply the majority’s rule, an automatic reversal rule should have been applied to the denial of a jury trial concerning special circumstances in Marshall and concerning prior convictions in Epps. The proceedings in those cases afforded the criminal defendants all of the rights applicable in criminal proceedings, yet we did not apply a rule of automatic reversal where the defendant was erroneously not afforded a jury trial as required by the applicable statute. If we are to borrow protections provided in criminal proceedings for the present matter, then Marshall and Epps should supply the basis for how we evaluate any error concerning the right to a jury trial based only on statute. Moreover, the actual restrictions on life and liberty as to which a jury trial was not afforded in Marshall and Epps were far more serious than the one-year civil MDO commitment at issue in the present case. There is no reason to single out MDO proceedings for different treatment, as today’s opinion does.
Simply put, unlike Ernst, the present case is not a criminal case. Section 2972 itself refers to an MDO commitment proceeding as a “civil hearing.” (§ 2972, subd. (a); see People v. Fernandez (1999) 70 Cal.App.4th 117, 126, fn. 5 [82 Cal.Rptr.2d 469]; People v. Robinson (1998) 63 Cal.App.4th 348, 352 [74 Cal.Rptr.2d 52]; People v. Superior Court (Myers) (1996) 50 Cal.App.4th 826, 832 [58 Cal.Rptr.2d 32].) As one court has noted, “the MDO provisions are neither punitive in purpose nor effect and their procedural safeguards do not require us to transform the hearing into a criminal trial.” (Myers, supra, at p. 834.) Although some procedural safeguards that are applicable in criminal proceedings have been extended by statute to MDO proceedings, MDO proceedings do not have many of the protections afforded to criminal *1154 defendants. (People v. Beeson (2002) 99 Cal.App.4th 1393, 1404 [122 Cal.Rptr.2d 384] [“a defendant in an MDO proceeding, despite the statutorily required proof beyond a reasonable doubt standard, does not have a constitutional right to the additional procedural safeguards generally reserved for criminal defendants, including a presumption-of-innocence instruction”]; see People v. Williams (2003) 110 Cal.App.4th 1577, 1592 [2 Cal.Rptr.3d 890] [refusing to allow an absolute right of self-representation]; People v. Clark (2000) 82 Cal.App.4th 1072, 1081 [98 Cal.Rptr.2d 767] [refusing to recognize a right against compulsory self-incrimination]; People v. Robinson, supra, at p. 349 [refusing to apply a prohibition against ex post facto laws].)
The high court has also rejected the argument that the provision of some criminal procedural safeguards found in criminal trials means that other protections provided to criminal defendants should also apply to civil commitment proceedings. In Allen v. Illinois (1986) 478 U.S. 364 [92 L.Ed.2d 296, 106 S.Ct. 2988], the United States Supreme Court rejected the notion that the Fifth Amendment right against compulsory self-incrimination in criminal proceedings should also apply to a civil commitment proceeding under the Illinois Sexually Dangerous Persons Act. The court reasoned: “[T]he State has indicated quite clearly its intent that these commitment proceedings be civil in nature; its decision nevertheless to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there.” (Allen, supra, at p. 372.)
The fact that our courts have refused to provide other protections afforded in the criminal context to MDO commitment proceedings only accentuates why it is illogical to assume that civil MDO proceedings should be treated the same as criminal prosecutions. Criminal trials and civil MDO proceedings serve very different goals and purposes, yet today’s opinion completely fails to address those differences and, instead, imposes a reversal rule derived from the constitutionally protected right to jury trial in criminal prosecutions.
Significantly, the majority does not hold that an MDO defendant’s right to a jury trial rests on federal or state constitutional grounds; rather the majority proceeds on the assumption that the jury trial right in an MDO proceeding is based solely on the applicable statute.[5] Accordingly, because a defendant’s procedural rights in an MDO proceeding to be personally advised by the *1155 court of a right to a jury trial and to be asked whether he or she waives that right derive from a state statute, the decision in Ernst and the other criminal cases relied upon by the majority to support a reversible per se rule are clearly distinguishable from the present case, and there is no persuasive reason why they should be extended to civil MDO commitment extension proceedings.[6]
C. The circumstances of the error in this matter do not defy harmless error review
Quoting the high court’s decision in Sullivan v. Louisiana (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (Sullivan), today’s opinion additionally suggests that a reversible per se rule is justified because the error in question “ ‘def[ies] analysis by “harmless-error” standards’ ” on the theory that the effects of the error are “ ‘unmeasurable.’ ” (Maj. opn., ante, at p. 1135, quoting Sullivan, supra, 508 U.S. at p. 281.) But this reference to Sullivan is inapt.
In Sullivan, the high court recognized the “right to trial by jury in serious criminal cases to be ‘fundamental to the American scheme of justice.’,” (Sullivan, supra, 508 U.S. at p. 277, quoting Duncan v. Louisiana, supra, 391 U.S. at p. 149, italics added.) The quote from Sullivan cited by today’s *1156 majority addressed a faulty instruction concerning the definition of reasonable doubt and how that erroneous instruction had the effect of denying the defendant his right to a jury trial for first degree murder in a manner that defied review. (Sullivan, at p. 281.) But in subsequent cases, the high court has distanced itself from some of the very broad language and reasoning in Sullivan (see, e.g., Neder v. United States (1999) 527 U.S. 1, 10-15 [144 L.Ed.2d 35, 119 S.Ct. 1827]), and has declined to apply an automatic reversal rule in somewhat analogous situations, including a trial court’s failure to instruct the jury on an element of a charged offense (ibid.) and a trial court’s failure to submit a sentencing factor for determination by a jury (Washington v. Recuenco (2006) 548 U.S. 212, 218-222 [165 L.Ed.2d 466, 126 S.Ct. 2546]).
Significantly, the majority does not address the potential difference between the errors that occurred in this case and the complete deprivation of the right to jury trial that would be presented, for example, when a defendant who expresses a wish to be tried by a jury is denied that right. The majority cites no case in which the United States Supreme Court (or, indeed, any court) has applied an automatic reversal rule in a case like this one — a civil commitment proceeding in which a party’s right to a jury trial derives solely from statute, and the trial court’s errors are simply failing to personally advise a defendant who is represented by counsel of the right to a jury trial and to obtain a personal waiver of that right from the defendant.
In my view, the prejudicial effect of the limited errors at issue here— namely, the trial court’s failure to personally advise a defendant in an MDO proceeding of the right to jury trial and to obtain an on-the-record personal waiver of that right — are fully amenable to review under the traditional state harmless error standard mandated by article VI, section 13.
The amenability of these types of statutory errors to harmless error review is clearly demonstrated by this court’s past decisions.
In People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183 [96 Cal.Rptr.2d 463, 999 P.2d 686] (Zamudio), for example, we analyzed the effect of a trial court error under a statute, section 1016.5, that requires a trial court to advise a defendant who is pleading guilty or no contest of all the possible immigration consequences of such a plea. In Zamudio, the defendant agreed to waive his jury trial and pled “no contest ... to the felony of unlawful driving or taking of a vehicle without the owner’s consent.” (23 Cal.4th at p. 188.) Before taking the plea, the trial court properly advised the defendant of some of the immigration consequences of such a plea, but the court failed to advise him that his conviction might result in his being precluded from any future admission to this country. We agreed with the defendant’s contention that the trial court had erred under the statute in failing to so advise him. (Ibid.)
*1157 Nonetheless, notwithstanding the fact that section 1016.5, subdivision (b), contained a provision specifically stating that, in the event of any advisement error under the statute, the court “shall vacate the judgment” and allow the defendant to withdraw the plea, in Zamudio this court concluded that the trial court’s error could not properly be considered prejudicial per se and automatically require setting aside the defendant’s plea. Instead, we held that the prejudicial effect of the error had to be determined under the standard established by article VI, section 13, and we concluded that under that constitutional provision the defendant was required to show prejudice from the absence of such advice, namely “that, properly advised, he would not have pleaded no contest in the first place.” (Zamudio, supra, 23 Cal.4th at p. 192.)
Similarly, past decisions of this court that have addressed a trial court’s failure to comply with the statutory safeguards regarding a criminal defendant’s waiver of the right to be personally present at trial proceedings have also concluded that such errors are fully amenable to, and are properly evaluated under, the ordinary harmless error test established by article VI, section 13. (See, e.g., People v. Riel (2000) 22 Cal.4th 1153, 1195-1196 [96 Cal.Rptr.2d 1, 998 P.2d 969]; People v. Mayfield (1997) 14 Cal.4th 668, 738-739 [60 Cal.Rptr.2d 1, 928 P.2d 485]; People v. Jackson, supra, 13 Cal.4th at pp. 1209-1212.) In People v. Jackson, for example, after concluding that the trial court had violated the applicable provisions of section 977 in permitting the capital defendant in that case to be absent from a portion of the trial in which evidence was taken, this court declared that because “the error in this case is of a purely statutory dimension^] [w]e will . . . reverse the judgment only if we can conclude ‘that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.’ ” (13 Cal.4th at p. 1211, quoting Watson, supra, 46 Cal.2d at p. 836.) The court in Jackson went on to find that “[n]o such reasonable probability appears in the present case,” reasoning that because the defendant was aware of his right to be present at the trial proceedings in question and had agreed with his counsel’s judgment that there was no need for his presence at such proceedings, “defendant’s absence during that testimony was not likely to affect the outcome of the trial.” (Jackson, at p. 1211.)
As in Zamudio and the cases involving a waiver of personal presence, the relevant inquiry here is whether, if the trial court had properly advised Blackburn of his statutory right to a jury trial and sought a personal waiver, it is reasonably probable that the outcome of the proceeding would have been different. As the cited cases make clear, such an inquiry does not defy analysis under the ordinary harmless error standard.
*1158 Applying the traditional Watson harmless error standard to the circumstances of this case, I believe it is clear that it is not reasonably probable that the trial court errors affected the outcome of this matter. Here, nothing indicates that had Blackburn been advised of his statutory right to a jury trial and had he been asked whether he waived that right, he would have declined to waive that right. This matter was Blackburn’s third MDO extension proceeding. Blackburn was represented by experienced counsel, who was fully aware that his client had the right to a jury trial and who, with that knowledge, determined that it was in his client’s best interest to be tried by the court rather than by a jury. Presumably, counsel concluded that Blackburn would benefit from having this MDO matter decided by a trial judge who was experienced in handling such proceedings and might be less likely to be influenced by possible stigma concerning mental health issues than the average lay juror who has no experience with such matters. Furthermore, because the defense presented no evidence whatsoever, this is not a case in which there is evidence that, from defendant’s perspective, would potentially be more persuasive to a jury than to a court. Under these circumstances, it is counterintuitive to conclude that Blackburn would have rejected his counsel’s choice and insisted on a trial by jury after being advised of that right.
The case of People v. Lightsey (2012) 54 Cal.4th 668 [143 Cal.Rptr.3d 589, 279 P.3d 1072], relied on by the majority, is quite distinguishable. In that matter, the defendant was erroneously denied counsel during competency proceedings, and, instead, represented himself, presenting an expert who testified that the defendant was competent to stand trial. In Lightsey, we explained that such an error defied review because, if counsel had been appointed, there were “myriad possible strategic choices counsel might have made that could have affected the outcome, for example, by choosing a defense expert different from the expert defendant chose, [or] asking for a third expert to break the tie between the two experts already consulted.” (Id. at p. 701.) Moreover, “the evidence presented regarding defendant’s competence was conflicting.” (Ibid.) Consequently, we concluded that “allowing defendant to represent himself in the competency proceedings was akin to structural error, rendering the result of the proceedings — the finding that defendant was mentally competent to stand trial — unreliable.” (Ibid.)
In stark contrast to the facts in Lightsey, Blackburn was represented by experienced counsel. There is no indication or evidence that Blackburn would have disagreed with his counsel’s choice to have a bench trial. Because we know what evidence the state presented and that the defense did not present any conflicting evidence at all, there was no evidence that might plausibly be considered more persuasive in defendant’s favor if tried before a jury. The trial court errors here were amenable to harmless error review and were not prejudicial under the Watson standard.
*1159 III. Conclusion
Past cases have explained that an overly broad rule of reversible error that automatically compels the reversal of a judgment on the basis of an error that did not affect the outcome “will result either in a superfluous retrial in which the outcome is a foregone conclusion or, even more unfortunately, in a new trial whose result is altered by the loss of essential witnesses or testimony through the passage of time.” (Cahill, supra, 5 Cal.4th at p. 509.)
Today’s majority commits just such a mistake by failing to follow the mandate of article VI, section 13, and holding that the statutory advisement and personal waiver errors at issue here should generally be considered prejudicial per se. Because the errors here do not in themselves constitute a “miscarriage of justice” (ibid.) and are amenable to constitutionally mandated harmless error review under article VI, section 13, I dissent from the majority’s adoption of an automatic reversal rule. And because I believe it is clear that the trial court errors were not prejudicial in this case, I would affirm the judgment.
Chin, J., concurred.

 All subsequent statutory references are to the Penal Code unless otherwise indicated.

 Because the errors in this case were simply the trial court’s failure (1) to personally advise an MDO defendant who was represented by counsel of the right to jury trial and (2) to obtain a personal waiver of that right, there is no need to decide what harmless error standard would apply if an MDO defendant who requested to be tried by a jury was denied that opportunity or if an MDO defendant who was not represented by counsel was not advised of the right to jury trial or asked whether he or she waived that right. There is no reason to prejudge those questions in this case.

 The majority also cites People v. Collins (2001) 26 Cal.4th 297 [109 Cal.Rptr.2d 836, 27 P.3d 726] (Collins) in support of its conclusion, but that case involved an instance in which the trial court improperly induced the defendant to waive a jury trial by offering the defendant a benefit if he agreed to be tried by the court rather than a jury. In Collins, this court held that *1152 the trial court’s “error in improperly inducing a waiver of that right amounts to a ‘structural defect in the proceedings’ requiring that the judgment of conviction be set aside without the necessity of a determination of prejudice.” (Id. at p. 312.) The facts of Collins are entirely distinguishable from the present case, where no inducement was given to encourage the waiver of a jury trial, and defense counsel knowingly and voluntarily requested a court trial and defendant raised no objection.
In addition, and quite significantly, as in Ernst, in Collins the requirement of a valid, express, in-court waiver of a jury trial by the defendant rested on the provisions of article I, section 16 of the California Constitution, a requirement that, as noted above, does not apply in a civil proceeding. In fact, the court’s opinion in Collins specifically relied upon the federal and state constitutional basis of the criminal defendant’s right to a jury in that case in distinguishing its holding from this court’s then-recent decision in People v. Epps (2001) 25 Cal.4th 19 [104 Cal.Rptr.2d 572, 18 P.3d 2] (Epps) — a case described and discussed below. The court in Collins explained in this regard that because the defendant’s right to a jury trial in Epps was based on a state statute rather than the Constitution, the jury trial error in Epps was “purely one of state law [and thus] was subject to the state test of harmless error ([Watson, supra, 46 Cal.2d at p. 836]), requiring reversal only upon a finding of a reasonable probability of a result more favorable to the defendant in the absence of the error.” (Collins, supra, 26 Cal.4th at p. 313, fn. 5.)

 The opinion in Marshall explained that a jury trial on the special circumstance allegation was required by the applicable statute, not the Constitution. (Marshall, supra, 13 Cal.4th at p. 851, fn. 9.)

 No case has held that the federal or California Constitution guarantees an individual a right to a jury trial in an MDO proceeding, and it would be difficult to reach such a conclusion. In general, the jury trial provisions of the United States and California Constitutions preserve “the right to trial by jury as it existed at common law . . . and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution.” (People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 287 [231 P.2d 832] [interpreting *1155 Cal. Const., art. I, former § 7, see now art. I, § 16]; see Duncan v. Louisiana (1968) 391 U.S. 145, 160-161 [20 L.Ed.2d 491, 88 S.Ct. 1444] [interpreting due process clause of the 14th Amend, of the U.S. Const.].) Commitment proceedings for MDO’s, as defined by section 2970, were apparently unknown at common law, and the parties have not directed us to any authority suggesting otherwise. (See Matter of Application of O’Connor (1915) 29 Cal.App. 225, 235-236 [155 P. 115] [“where the state constitution guarantees the common-law right of trial by jury, only those cases in which that right was habitually exercised according to the course of the common law come within the terms of the guaranty, and ... an inquisition of insanity is not one of those cases”].)

 I note that in People v. Barrett (2012) 54 Cal.4th 1081 [144 Cal.Rptr.3d 661, 281 P.3d 753], the majority concluded that a person facing a civil commitment as a dangerous developmentally disabled person under Welfare and Institutions Code section 6500 has no due process or equal protection right to be advised of the right to jury trial or to personally waive such a right. Justice Liu’s concurring and dissenting opinion in that case would have found that Barrett had a state statutory right to be advised of her jury trial right, but further concluded that the error was harmless under the state law harmless error test of Watson, stating “I would conclude on the basis of the evidence that there was no reasonable probability Barrett would have achieved a more favorable outcome had she been tried by a jury.” (People v. Barrett, supra, at p. 1151 (cone. & dis. opn. of Liu, J.); see id. at p. 1114 (cone. & dis. opn. of Werdegar, J. [finding trial court erred in failing to advise defendant of her jury trial right, but concluding that the error was nonprejudicial under art. VI, § 13 “because it was not reasonably probable she would have achieved a more favorable result had the trial court informed her of her jury trial right”].) Contrary to the implication of the majority (maj. opn., ante, at pp. 1136-1137), absolutely nothing in the concurring and dissenting opinions in Barrett suggests that the defendant had knowingly and voluntarily waived that right or that resolution of the harmless error question turned on an affirmative showing of that fact.